State v. Wells.

STATE, EX REL. GEORGE C. CURYEA, APPELLANT, v. HARRY
E. WELLS, COUNTY CLERK, APPELLEE.

FILED NOVEMBER 1, 1912.   No. 17,824.

1. **Elections: NOMINATIONS.** The legislature of this state in provid-
ing for the "closed primary" has adopted the policy of allowing
each political party to select its own candidates.

2. ———: ———. Any one who has the statutory qualifications to
fill an office may be a candidate for election to that office. If
he affiliates with a political party he may become the candidate
of that party, or he may become a candidate independently of all
parties.

3. ———: ———. Under our primary law no political party can be
compelled to present as its candidate at a general election one
who does not affiliate with the party so presenting him as a can-
didate.

4. ———: ———: FILLING VACANCIES. If a political party at its pri-
mary makes no nomination of a candidate for election to an
office, a vacancy has occurred, within the meaning of the statute,
and the proper party committee may fill that vacancy.

APPEAL from the district court for Lancaster county:
P. JAMES COSGRAVE, JUDGE. *Reversed with directions.*

*A. S. Tibbets* and *Sterling F. Mutz,* for appellant.

*J. B. Strode, G. E. Hager* and *Whedon & Peterson,*
contra.

SEDGWICK, J.

At the primary election held in April, 1912, Carl O.
Johnson was a candidate on the regular republican ticket
for nomination as a candidate of that party at the en-
suing general election for the office of county commis-
sioner of Lancaster county. He made the necessary fil-
ings, declaring under oath that he affiliated with the re-
publican party, and procured his name to be printed upon
the regular republican ballot as the candidate of that

25

party. There was no candidate named on the printed ballot of the democratic primary for nomination to that office as a candidate of the democratic party. There was a blank space left upon the ballot of the democratic party for entering the name of a candidate of that party for nomination to that office. Mr. Johnson's name was written in 62 of the democratic ballots as the candidate of that party. He did not accept the nomination as the candidate of the democratic party, nor file any statement that he affiliated with that party. There is nothing in the record to show that there is any affiliation between the republican and democratic parties for the ensuing election. The proper committee of the democratic party, considering that a vacancy had occurred upon the ticket of that party, duly certified the nomination of the relator as the candidate of the democratic party. The respondent, who is county clerk of Lancaster county, refused to enter the name of the relator upon the official ballot for the ensuing election as the candidate of the democratic party for the office of county commissioner, and the relator brought this action of mandamus in the district court for Lancaster county to compel the respondent to place his name upon the official ballot as such candidate. The district court found in favor of the respondent and refused to issue a peremptory writ, and the relator has appealed to this court.

Our statute providing for primary elections recognizes the existence of organized political parties, and their right in general to regulate and control their own organizations for the purposes for which they are created. It imposes upon them certain restrictions as to the method of presenting their candidates to the voters at the general election. In the construction of the various statutes involved, we must consider both the right of the voter and the right of the candidate. Every voter has a right to be a candidate for a public office if he possesses the qualification which the law requires. If he possesses the qualifications required to fill the office, can he be the candidate

of more than one political party, and, if so, how and under what conditions? The statute provides when and how one may be a candidate of two or more political parties. If he cannot fill the requirement so as to be the candidate of any political party, he may still be a candidate at the general election by petition. The right of the voter to vote at the general election for whom he pleases cannot be limited. Whether the legislature can limit the voter in selecting a candidate for the various parties may be a debatable question. The important question here is as to the power of the legislature to protect the various political parties in their right to present candidates at the general election who affiliate with the party that presents them. And, if the legislature has such power, has it intended to require as a qualification of the candidate of a political party that he shall be in affiliation with that party? After trial of both methods the legislature has adopted what is called the closed primary. This contemplates that each political party shall have the right to select its own candidates, and shall have such protection as the law can afford in exercising that right. To this end it was necessary, and no doubt within the power of the legislature, to prescribe certain qualifications.

It is not necessary, in order to preserve the rights of the voter at the general election, that the name of a candidate should appear on the ballot more than once, nor is it necessary that he should be described on the ballot at the general election as a member of more than one political party; and the legislature, to carry out the idea of a closed primary, may well provide that the average voter shall not be deceived by a statement on the ballot at the general election that a candidate belongs to or affiliates with two antagonistic political parties, when those parties have not affiliated, and the candidate has declared under oath that he affiliates with one of them, and has refused and neglected to state that he affiliates with the other. In every instance in which the statute, as it now is, mentions the qualifications of a candidate of a political

party at the primary election, it prescribes affiliation with the party for which he proposes to be a candidate as a necessary qualification. All provisions of the open primary law which recognize the right to become a candidate of a political party without that qualification were repealed when the closed primary was provided for. Voters must declare their party affiliation when they register, and also when they vote at the primaries, and if their right to vote is challenged they must then declare their party affiliation. If they nominate candidates to be voted for at the primary election, they must declare that they affiliate with the party whose candidate they seek to nominate, and the law requires that a record be kept of the party affiliations of the voters. Ann. St. 1911, secs. 5855, 5866, 5878-5881. In all the cases provided in the statute, the candidate for nomination at the primaries must declare his party affiliation. The right to be a candidate at the general election and to have a place upon the printed ballot for that purpose is provided for. He may be such candidate independently of all parties; or, if he affiliates with any political party, he may have his name upon the ballot at the general· election as the candidate of that party. If two or more political parties are affiliated for any general election, he may, of course, affiliate with both or all of them and become their candidate accordingly. But no political party can be compelled to put forward as its candidate one who does not affiliate with it. The voter at the general election may vote for whom he pleases, but may not be deceived by false labels. It surely is within the power of the legislature to prevent such deception, and we think it as clearly appears that it has intended to do so. It is not necessary to determine in ·this case whether a blank space should be left upon the primary ballot for inserting the name of the voter's choice as the candidate of his party. Upon this point the court is not entirely agreed. We are determining the qualifications for nominating as the candidate of a political party, and not the right to be a candidate for election to the

office. We conclude that one of the necessary qualifications for a candidate of a political party is affiliation with that party. If two political parties have affiliated for the general election, one may affiliate with both and be the candidate of both.

It is said that no vacancy had occurred upon the democratic ballot, and therefore the committee of that party was without power to appoint the relator. The statute provides: "Vacancies occurring upon any party ticket after the holding of any primary shall be filled by a majority vote of the party committee of the city, district, county or state, as the case may be, and a certificate of such nomination shall be filed as required by section 5776 of Cobbey's Annotated Statutes 1903." Ann. St. 1911, sec. 5888.

The statute of South Dakota provided that, "if for any reason *after a nomination as a party candidate for * * * state office has been made,* a vacancy shall occur," and the supreme court of that state in construing the statute gave great force to the words "after a nomination as a party candidate has been made." It was thought that the use of these words made clear "that the main purpose of the legislature in enacting the primary law was to take the making of all nominations out of the hands of conventions and political central committees, and to require that the people themselves, by their direct votes, should name party nominees; and that the only vacancies contemplated by the legislature, to be filled by conventions or central committees, are such as may occur after *the people themselves* have made nominations, and vacancies therein have occurred by death, resignation, or otherwise." *Stewart v. Polley,* 137 N. W. (S. Dak.) 565. It would seem that this construction of their statute is reasonable, as it is difficult to see what other purpose the legislature could have in inserting the words "after a nomination as a party candidate has been made." These words do not appear in our statute, and we must give the ordinary meaning to the word "occur." Webster's New International Dictionary

defines this word as follows: "To meet one's eye; to be found or met with; to present itself; to appear; to happen; to take place; as, if opportunity *occurs;* do not let it *occur* again." This seems to be plainly the sense in which the legislature used it in our statute. A vacancy on the ballot presented itself and appeared, and it was the province of the proper committee to fill such vacancy. If the only candidate voted for had died on primary day before the votes were cast, it will be conceded that a vacancy would occur. If after the primary there is a vacancy, it has "occurred," within the meaning of the statute.

The democratic committee requested Mr. Johnson to withdraw from the ticket. This, it is urged, estops the relator to dispute his qualifications to be the candidate of the party. In the letter asking Mr. Johnson to withdraw, it was stated that he was not nominated, and could not be the candidate of the democratic party. This letter must be taken rather as a demand that he withdraw his pretentions to the position than as an admission that he was duly nominated or was entitled to remain on the ballot of that party. It cannot be relied upon as an estoppel, even against the committee, much less against this relator.

For the reasons stated, the judgment of the district court is reversed and the cause remanded, with instructions to issue a peremptory writ as prayed.

REVERSED.

ROSE, J., dissenting.

As stated in the opinion of the majority, this is an application for a peremptory writ of mandamus to compel the county clerk of Lancaster county to place upon the official ballots for the election to be held November 5, 1912, the name of relator as the democratic candidate for county commissioner from the first district. After the primary election held April 12, 1912, the democratic county central committee selected relator as the democratic candidate for

the office named. He traces to that source his right to the relief demanded. He was not nominated at the primary. As a candidate for the same office the republicans regularly nominated at the primary Carl O. Johnson, who afterward accepted the republican nomination and made oath that he affiliated with the republican party. Among the reasons given by the county clerk for refusing to insert relator's name on the official ballots for the November election are the following: At the primary election in the first commissioner district the official ballots prepared for democratic electors did not contain the name of a democratic candidate for county commissioner. On the official, printed, democratic, primary ballots, however, a blank space had been left with a view to permitting each democrat to express his choice by writing in the blank the name of his preferred candidate. In the spaces thus appearing on the democratic ballots Carl O. Johnson received 62 votes, being a majority of those cast by democrats for the nomination of a candidate for county commissioner. The returns were duly canvassed and the canvassing board certified to the county clerk that Johnson was the democratic nominee. He has not declined the nomination. No objections thereto were ever filed in the county clerk's office. Johnson is therefore entitled to a place on the official ballots for the November election as the nominee of the democratic party. The trial court sustained the county clerk's defense as thus outlined and denied the writ. Relator appeals. In my view of the law the ruling of the district court is right.

Relator argued that there is no authority to nominate candidates by writing names in blank spaces on the primary ballots and that therefore Johnson is not the democratic nominee. The primary law does not forbid the making of nominations in that manner. While it does not in the body of the act itself contain in direct terms authority to vote in blank spaces, it provides: "The official primary ballot shall be printed substantially as is required by law for official ballots used at November elections,"

with an exception not material here. Comp. St. 1911, ch. 26, sec. 117$i$. The general election law to which reference is thus made provides: "Nothing in this act contained shall prevent any voter from writing on his ballot the name of any person for whom he desires to vote, for any office, and such vote shall be counted as if printed on the ballot, and marked by the voter." Comp. St. 1911, ch. 26, sec. 139. That part of the general election law relating to the preparation of the ballots for the November election further declares: "In each division, and beneath all candidates placed there by nomination or petition, a blank space shall be provided, into which electors may write the name of any person for whom they wish to vote, and whose name is not printed upon the ballot." Comp. St. 1911, ch. 26, sec. 140.

The general election law requires instructions to voters as follows: "If you wish to vote for any person whose name is not printed on the ballot, write his name in full in the blank space on the ballot under the proper office you wish him to hold, and make a cross in the square opposite the written name." Comp. St. 1911, ch. 26, sec. 159, subd. 4.

The effect of the statutory references to these provisions of the general election law is to insert them in the primary law in so far as they are applicable thereto. *Shull v. Barton*, 58 Neb. 741; *State v. Junkin*, 87 Neb. 801. In preparing the ballots for the first commissioner district, the county clerk followed the foregoing provisions of statute. A ballot with a blank space for county commissioner was available to each democratic elector. Under a liberal construction of the primary law and of the constitutional provisions relating to elections as construed in *State v. Junkin*, 85 Neb. 1, the primary ballots prepared by the county clerk and the ballots cast by democrats in favor of Johnson were lawful. Exercising the right to participate at the primary in nominating a candidate to be voted for at the November election, 62 members of the democratic party voted for him. No other person received

so-many votes. There is no statute prohibiting those who affiliate with one party from nominating the candidate of another party. By voting for their choice in doing so they are not disfranchised at a primary election.

Relator further argued that there was a vacancy because Johnson failed to comply with statutory provisions requiring a candidate to accept a nomination under oath, to pay the filing fee, to declare his party affiliation and to make a statement that he would qualify and serve if elected. In this connection it is insisted that the vacancy was properly filled by the nomination of relator and that his name should be printed on the ballots for the November election. Those statutory provisions evidently apply to a candidate seeking a nomination by the political party with which he affiliates. Johnson, as a candidate of the republicans, complied with the provisions of statute. His nomination by the democratic party was voluntary. He did not decline it. As a republican candidate he paid his fee, declared his party affiliation, accepted the nomination and said he would qualify and serve if elected. That he should be required to repeat these acts in relation to a rival party and declare an affiliation having no existence, under penalty of defeating the democratic nomination lawfully made, was certainly not the intention of the legislature. The statutes should not be so construed. In this view of the law there was no vacancy when the democratic county central committee selected relator as a candidate for county commissioner instead of Johnson who had been regularly nominated at the primary by the votes of the democratic electors. In my judgment the effect of directing the county clerk to print relator's name on the official ballot is to defeat part of the action of the democratic primary which was held by democrats alone without interference from republicans, to create an artificial vacancy in the first commissioner district and to permit a political committee to set aside the regular action of the voters themselves.