HAZEL FROM, GUARDIAN, APPELLEE, V. GENERAL AMERICAN
LIFE INSURANCE COMPANY, APPELLANT.

273 N. W. 36

FILED MAY 7, 1937.   NO. 29977.

*Loren H. Laughlin, Allen May* and *J. R. Burcham,* for appellant.

*Ginsburg & Ginsburg, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

GOOD, J.

In an action on two life insurance policies plaintiff recovered judgment for disability benefits and for premiums charged to have been wrongfully exacted on such policies. Defendant has appealed.

International Life Insurance Company issued to David Harold From two policies of life insurance, each for $2,500, the first issued in 1925, the second in 1928. Each policy provided for the payment of $25 monthly to insured if he should become totally and permanently disabled. Each policy provided that disability, to be total and permanent, must be such as to cause insured to be wholly disabled by bodily injury or disease, so that he is thereby and will be permanently, continuously and wholly prevented from pursuing any occupation whatsoever for remuneration and profit. There was a further provision that, where such disability has existed continuously for six months or more, it shall be presumed to be permanent, provided that no indemnity be payable for the first six months of such disability. The policies also provided that the company would waive payment of any premiums falling due subsequent to the date of approval by the company of proof that the insured has become permanently disabled as set forth in the policy. The second policy contained an additional provision that the original cause of the disability must have

occurred or been contracted after the first annual premium had been paid on the policy.

In August, 1928, Missouri State Life Insurance Company assumed and agreed to carry out and perform all the obligations of both of such policies. On the 7th of September, 1933, the defendant, General American Life Insurance Company, took over the assets of Missouri State Life Insurance Company and assumed and agreed to carry out all the obligations of Missouri State Life Insurance Company with reference to the two policies.

April 1, 1931, David Harold From was adjudged incompetent, and his wife, Hazel From, plaintiff herein, was duly appointed and qualified as his guardian.

In 1930 insured made proof to Missouri State Life Insurance Company that was satisfactory to it, showing that he was totally and permanently disabled. That company refused to make payments, however, until a guardian had been appointed for the insured, and, after appointment of the guardian, the payment of $50 monthly was made until the assumption of the obligations of the policies by the defendant company. Defendant continued to make the payment of $50 each month to and including December 12, 1934. Defendant then made some further investigation and declined to continue payment of benefits. December 17, 1934, defendant wrote insured as follows:

"We have again reviewed your claim and as a result it has been found necessary to discontinue further benefits. Premiums falling due hereafter must be taken care of by you in the regular manner if your policy is to remain in good standing. * * * We do not mean to infer that you are now in perfect health or that you may not be somewhat partially disabled, but it is our opinion that you are not totally and permanently disabled as defined in your policies." Payments were thereafter discontinued, and this action was brought, with the indicated result.

From the record it appears that insured was married in 1920; that he and his wife engaged in farming; that they were thrifty and successful until November, 1929, when

he had an attack of coma or stuporous condition which lasted for about a week; that similar attacks occurred at intervals thereafter; that he lost interest in his work; became morbid; seemed to lose affection for his wife and children; avoided friends; avoided company; could not work steadily; had hallucinations or delusions, and became unable to perform any work of consequence. The medical evidence tends to prove that he was and is suffering from *dementia præcox*, which is a disease affecting the mind, is progressive in its nature and incurable. Plaintiff's evidence tends to prove that insured was totally and permanently disabled from 1930 to the time of trial.

Defendant contends that the trial court committed reversible error in permitting a neighboring farmer of insured to testify and give his opinion as to the ability of insured to perform duties of a farmer, and that insured was disabled from performing farm labor. Defendant contends that the witness was not an expert and is merely permitted to state facts within his personal knowledge, and that his conclusion or opinion with respect to matters in issue, or relevant to the issues, cannot be received in evidence.

We think the applicable rule is that a nonexpert witness, who has had opportunity for observation and knowledge, may state his opinion as to the appearance, state of health and ability of another person to perform work or labor, especially where he states the general facts upon which he bases his opinion. One of the most common applications of the principle is that a nonexpert may, after detailing the facts on which he bases his opinion, give his opinion as to the sanity or insanity of another person. This court has held: "A nonexpert witness may testify to a conclusion when, from the nature of the subject under investigation, it is not possible to lay before the jury all the facts from which such conclusion is drawn." *Missouri P. R. Co. v. Palmer,* 55 Neb. 559, 76 N. W. 169.

In *Young v. Beveridge,* 81 Neb. 180, 115 N. W. 766, it was held: "The ability of a person to perform manual labor

is not a matter so exclusively within the domain of medical science that witnesses who were acquainted with him and had opportunity to observe his ability cannot testify with reference thereto." Among other cases holding to a like tenor are *Eastwood v. Klamm,* 83 Neb. 546, 120 N. W. 149; *Hilmer v. Western Travelers Accident Ass'n,* 86 Neb. 285, 125 N. W. 535; *Clarke v. Irwin,* 63 Neb. 539, 88 N. W. 783; *Kehl v. Omaha Nat. Bank,* 126 Neb. 695, 254 N. W. 397; *Gartner v. Mohan,* 41 S. Dak. 406, 170 N. W. 640. See, also, 22 C. J. 618; 3 Jones, Commentaries on Evidence, p. 2306. We think the trial court did not err in this respect.

Defendant asserts that the trial court erred in admitting over objection the decree of the court appointing insured's wife as guardian for insured. The pleadings admit that insured has been placed under guardianship, and it is insisted that the court should have excluded the evidence offered to prove an admitted fact. Defendant cites as authority for this proposition *Thompson v. Colfax County,* 106 Neb. 351, 183 N. W. 571. The holding in that case is that it was not error to exclude such testimony, but, even if the admission of the decree was technically erroneous, it is no ground for reversal, unless it was prejudicial to the defendant. The pleadings admit that the insured was under guardianship. The record discloses that defendant had admitted insured's total disability and had paid benefits for a period of 15 months. The evidence also clearly shows that the only disability of insured was from his mental disease. Clearly, the admission of the decree could not have been prejudicial to the defendant because it related to a time long anterior to the commencement of this action and to a time when the insurance company, predecessor of defendant, insisted upon the appointment of a guardian before it would make the payments. It is a rule that harmless error will not work reversal of a judgment.

Defendant argues that there can be no recovery of disability benefits under the second policy of insurance which contains the provision that the original cause of the disability must have occurred or been contracted after the

first annual premium had been paid on the policy. There is evidence to the effect that *dementia præcox*, the disease from which insured was suffering, is an inherited disease, and it is contended, therefore, that the original cause of the disease antedated the issuance of the policy. It is no doubt true that an insurance company may limit its liability for disability benefits to a disease or condition or cause arising subsequent to the issuance of the policy. However, we think the general rule applicable is that the disease or cause must have been one which had manifested itself prior to the time, fixed in the policy, when the cause should first exist.

In *Davidson v. First American Ins. Co.*, 129 Neb. 184, 261 N. W. 144, it was held: "A provision in a policy of insurance indemnifying the insured 'for loss of time * * * from any bodily sickness or disease * * * which is contracted and begins after this policy has been in continuous force for not less than fourteen days' covers sickness or disease first manifesting itself after such period, although the medical cause may have antedated the policy." Even in one of the cases cited by defendant, *Valencia v. Continental Casualty Co.*, 127 Neb. 820, 257 N. W. 57, it was held, in effect, that a policy, providing for benefits for bodily sickness, which is contracted and begins after the date of the policy, covers disease or sickness first manifesting itself after such period, although medical cause may have antedated issuance of the policy. This is undoubtedly the rule in Nebraska, as well as in most jurisdictions. In the instant case there is no contention that the disease of *dementia præcox* ever manifested itself in insured until November, 1929.

Moreover, there is another reason why this contention is not available to defendant in the instant case. After it had paid disability benefits for a period of 15 months, defendant discontinued the payments and gave as the only reason for the discontinuance that insured was not totally and permanently disabled, and did not claim that the cause of his disability originated prior to the issuance of

the policy or the payment of the first annual premium. It has long been a rule in this jurisdiction that, "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold." *Mitchell v. Brotherhood of Locomotive Firemen and Enginemen,* 103 Neb. 791, 174 N. W. 422; *Hamblin v. Equitable Life Assurance Society,* 124 Neb. 841, 248 N. W. 397; *Pittenger v. Salisbury & Almquist,* 125 Neb. 672, 251 N. W. 287; *McDowell v. Metropolitan Life Ins. Co.,* 129 Neb. 764, 263 N. W. 145; *Ballou v. Sherwood,* 32 Neb. 666, 49 N. W. 790; *Powers v. Bohuslav,* 84 Neb. 179, 120 N. W. 942.

Defendant argues that the court committed error in the giving and refusing of instructions. So far as the instruction refused is concerned, the court, in fact, embodied it, in almost identical language, in one of the instructions which it gave.

Complaint is made of instructions Nos. 7, 8 and 9, given by the court. It is contended, first, that the court, in defining total disability, did not attempt to define the term "permanent," and thus the meaning of the term "permanent disability" was not given to the jury. By instruction No. 5 the court informed the jury that the burden rested on plaintiff to prove by a preponderance of the evidence that insured "was totally and permanently disabled * * * by reason of a mental disease on and since December 12, 1934, to and including this date" (May 7, 1936). In no instruction requested by defendant was the term "permanent" defined. The word "permanent" is one of common use, and we think that the jury could not have been misled by failure of the court to give a definition of that term. Moreover, the policy provided that, if total disability existed for a period of six months, it would thereby be presumed to be permanent, so that where the court, by its instructions, required proof, by a preponderance of the evidence, of total disability existing from December 12, 1934,

to May, 1936, and if the jury so found, it would, in effect, under the policy be equivalent to permanent disability. The instruction was not prejudicial in this respect.

Defendant also contends that the instruction was erroneous in that it permitted the jury to find that there was total disability if insured was unable to perform the substantial duties of his business or occupation. The evidence shows that insured was a farmer; that he was not acquainted with, was not fitted for, and had no other business than that of a farmer.

The rule as stated by the court is substantially in compliance with that laid down in *Hamblin v. Equitable Life Assurance Society, supra,* and in *Oswald v. Equitable Life Assurance Society,* 128 Neb. 173, 258 N. W. 41. In the *Hamblin* case it was said (p. 845) : "The term 'total disability' is rarely, if ever, given a strictly literal meaning of absolute helplessness or entire physical disability, but rather inability to do substantially, or practically, all material acts for the transaction of insured's business in the customary and usual manner. * * * Sound reason and the great weight of authority sustain this view." A 'like holding was made in *Oswald v. Equitable Life Assurance Society, supra.* We think the term "total disability" was properly defined as applied to the facts in the instant case. If defendant had desired a more definite statement as to the meaning of the term "permanent," a request therefor should have been made in proper form. Instructions refused and given disclose no prejudicial error.

Defendant complains that the allowance made plaintiff for attorney's fee was excessive. That question is not properly before this court. We do not find that the question was called to the attention of the trial court either in the motion for a new trial or otherwise. This is a court of review, and if it were believed that the court committed error in this respect, the matter should have been submitted to the trial court for action before bringing the question to this court for consideration.

Finally, defendant complains that the evidence is in-

sufficient to sustain the verdict that insured was totally and permanently disabled, within the meaning of the policies. As heretofore pointed out, it had been determined and accepted by Missouri State Life Insurance Company, which was in privity with defendant in this case, that total and permanent disability had existed. Defendant admitted that such condition existed for a period of 15 months and made the payments, as provided for in the policies. There is nothing in the evidence that shows there has been any change for the better in insured's condition since the original allowance of the claim by defendant's predecessor in interest, and the evidence, as a whole, is sufficient to sustain the finding that insured is and has been totally and permanently disabled from December 12, 1934, to the time of trial of this action.

It is conceded by defendant that, if plaintiff is entitled to recover for the disability benefits under both of the policies, then she is entitled to recover for the premiums on the policies exacted by defendant subsequent to December 17, 1934.

The record appears to be free from prejudicial error.

AFFIRMED.