ELDON G. MILLS, APPELLANT, v. AETNA INSURANCE
COMPANY, A CORPORATION, APPELLEE.

96 N. W. 2d 721

Filed June 5, 1959. No. 34521.

*Ginsburg, Rosenberg & Ginsburg* and *Norman Kri-
vosha,* for appellant.

*Baylor, Evnen & Baylor* and *Warren K. Urbom,* for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, Eldon G. Mills, a captain in the United States Air Force, brought this action against defendant, Aetna Insurance Company, seeking to recover lost incentive flight pay allegedly due and unpaid under the provisions of a certificate of insurance issued to plaintiff and underwritten by defendant in a group contract of accident and health insurance issued and delivered by defendant to Air Force Association of which plaintiff was a member.

Plaintiff's petition, filed December 24, 1957, alleged that on and prior to October 10, 1956, defendant issued a group contract of accident and health insurance No. G 96 to Air Force Association of which plaintiff was a member, and that on October 8, 1956, plaintiff applied for, paid the required premium on, and received a certificate of insurance issued by defendant under said group contract. A true copy of said certificate, marked exhibit A, was attached to and made a part of plaintiff's petition, which then alleged that said certificate was in full force and effect and that plaintiff had fully performed all provisions thereof. It was thereafter alleged that during November 1956, plaintiff became disabled by disease, which ever since has prevented him from performing his duties and receiving incentive flight pay as referred to in the certificate, and that he has lost incentive flight pay in the amount of $205 a month which he would otherwise have received. Plaintiff alleged that upon occurrence of said disability, he notified defendant thereof and made proof of claim and loss as required by said policy, but that defendant has failed, neglected, and refused to pay plaintiff any sum whatever or recognize any liability therefor. Plaintiff

then alleged that on March 20, 1957, defendant denied any liability upon the ground that plaintiff's disability had its origin in April 1956; that plaintiff's disease which grounded him did not occur during the period covered by his policy as required therein, which position barred and precluded defendant from asserting any other defense; and that defendant thereupon offered to return to plaintiff the premium paid by him, but upon receipt thereof plaintiff returned same to defendant.

For answer, defendant admitted that it issued a group contract of insurance as alleged; that on October 8, 1956, plaintiff applied for a certificate of insurance; and that thereafter defendant issued same to plaintiff. The answer admitted that on or about March 20, 1957, and at other times, defendant offered to return the premium paid by plaintiff for said contract of insurance and certificate, but said offer was refused. Defendant then denied generally except as thus admitted, and alleged that said contract of insurance and certificate contained the following provision: " 'No coverage is afforded unless the accidental bodily injury or disease occurs during the period for which the individual member is covered,' " which provision was continuously in full force and effect on and after October 8, 1956. Defendant then alleged that the disease, if any, by reason of which plaintiff is or at any time since October 8, 1956, has been disabled so as to prevent him from performing duties entitling him to incentive flight pay, originated and manifested itself prior to October 8, 1956, and did not occur during the period for which plaintiff was covered by said contract and policy of insurance if he ever was so covered at any time, and did not occur on or after October 8, 1956. Plaintiff's reply was in the nature of a general denial.

Upon trial to a jury, and at conclusion of plaintiff's evidence, defendant moved for dismissal upon the grounds that the evidence failed to show that plaintiff was entitled to recover under the insurance contract

or certificate; that the evidence showed that the condition which caused plaintiff's disability and prevented him from performing duties entitling him to incentive flight pay had its origin prior to the effective date of the policy or certificate; that the evidence showed that plaintiff's bodily injury or disease, if any occurred, originated and manifested itself to plaintiff prior to the effective date of the policy or certificate; that the evidence failed to show that any accidental bodily injury or disease occurred during the period for which plaintiff was covered by the policy or certificate; and that the evidence failed to show that plaintiff suffered from any bodily injury or disease which was the cause of his being prevented from performing duties entitling him to incentive flight pay. Such motion was overruled, and at conclusion of all the evidence, same was renewed in identical language, but added thereto was the ground that the evidence failed: "* * * to show the whole contract between the parties." Thereupon the court said: "The court, on consideration of the motion of the defendant to dismiss the case at the close of all the evidence, finds that such motion should be sustained for the reasons stated in support of said motion, and the case is therefore dismissed." Judgment of dismissal was accordingly rendered.

Thereafter, plaintiff's motion for new trial was filed, but same was overruled primarily upon the ground that under the pleadings and issues tendered thereby, proof of the group insurance contract or policy was essential to plaintiff's said cause of action, and that failure of proof thereof rendered the evidence insufficient to sustain plaintiff's alleged cause of action on the issues tendered by said petition.

Therefrom, plaintiff appealed to this court, assigning and arguing in substance that: (1) The trial court erred in sustaining defendant's motion to dismiss and overruling plaintiff's motion for new trial on the ground that plaintiff had not established a contract with de-

fendant; and (2) that the trial court erred in any event in refusing to submit the issues to the jury upon the ground that the factual evidence adduced was insufficient to support a verdict and judgment for plaintiff.

We conclude that the second assignment has no merit because, as hereinafter observed, the admitted and undisputed evidence conclusively established that plaintiff's disease and disability therefrom occurred, originated, and manifested itself prior to the effective date of his policy or certificate, and did not occur during the period for which he was covered thereby. In the light of that conclusion, the admissions and allegations in defendant's answer, and its consistent position taken throughout the trial that defendant was not liable because of an admittedly single identical provision aforesaid contained in both the group contract and plaintiff's certificate, we conclude, in disposing of plaintiff's first assignment, assuming for purpose of argument only, that the trial court gave one wrong reason for its conclusion, that the dismissal and overruling of plaintiff's motion for new trial was correct in any event. It is elementary that if a judgment is correct, a wrong reason given therefor is not controlling in any respect. Also, we have held that: "Where a certain theory on any issue is relied upon by the parties at the trial as the proper one, it will be adhered to on appeal whether it is correct or not." Gillan v. Equitable Life Assurance Society, 143 Neb. 647, 10 N. W. 2d 693, 148 A. L. R. 496. See, also, Sorter v. Citizens Fund Mutual Fire Ins. Co., 151 Neb. 686, 39 N. W. 2d 276. Further, we have held that: "This court will dispose of a case on appeal on the theory on which it was presented to the trial court by the parties." O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123. Under the circumstances presented here, the first assignment requires no further discussion.

Concededly, plaintiff never sustained any accidental bodily injury and the primary question presented and

argued in the briefs filed herein is whether plaintiff's bodily disease and disability therefrom occurred and manifested itself during the period covered by the policy and certificate involved. We conclude that it did not. We determine that question in the light of the elementary rule that where, upon a jury trial, defendant at conclusion of all the evidence moves for a directed verdict in his favor or for dismissal, such motion must be treated as an admission of the truth of all material and relevant evidence admitted favorable to plaintiff, and he is entitled to the benefit of all proper inferences that can reasonably be deduced therefrom. Cutrell v. John Hancock Mutual Life Ins. Co., 145 Neb. 550, 17 N. W. 2d 465. Other applicable rules will be hereafter discussed.

At the outset, it should be pointed out that "Application for Protection of Flight Pay Income" admittedly filled out by plaintiff and mailed to defendant, together with a premium check for $24.60 on October 8, 1956, contained plaintiff's name, rank, serial number, service (USAF, ANG, etc.), mailing address, amount of annual flight pay, $2,460, and said: "I certify that I am currently receiving incentive flight pay." Thereafter followed plaintiff's signature and date, October 8, 1956. The annual premium charge was one percent of the represented annual flight pay.

In a couple of weeks, plaintiff was issued and received from defendant a certificate of insurance which on its face designated plaintiff as the "Insured Person" and fixed his "Insured Period 10-8-56 to 10-8-57 * * * Amount of Annual Flight Pay $2460.00 Premium $24.60." The body of said certificate provided, as far as important here, the following: "THIS IS TO CERTIFY that under and subject to the terms and conditions of Group Contract of Accident and Health Insurance No. G 96, issued and delivered to AIR FORCE ASSOCIATION, WASHINGTON, D. C. by AETNA INSURANCE COMPANY * * * the Member whose name appears on this

certificate shall be insured thereunder for the insured period prescribed against loss of Incentive Pay for Hazardous Flight Duty Performed, in accordance with current Service Regulations, but not exceeding an amount based upon the 'Amount of Annual Flight Pay' shown on the Member's certificate of insurance, hereinafter called Incentive Pay, due to accidental bodily injuries or disease, as follows: * * * If such injuries or disease shall disable the Member so as to prevent him from performing duties entitling the Member to receive Incentive Pay, the Company will pay monthly indemnity periodically, equal to the Incentive Pay applicable to his 'Pay Grade' and 'Years of Service' in accordance with current rates of 'Incentive Pay for Hazardous Duty' as set forth in current Service Regulations, in an amount equal to 1/12 of the 'Amount of Annual Flight Pay' shown on the Member's certificate of insurance, for the period of such continuous disability, but for not exceeding twenty-four months. * * * No coverage is afforded unless the accidental bodily injury or disease occurs during the period for which the individual member is covered."

Webster's New International Dictionary (2d Ed.), p. 1684, defines the ordinary and reasonable meaning of "occur" as: "To meet one's eye; to be found or met with; to present itself; to appear; hence, to befall in due course; to happen; * * *." We so defined the term "occur" in State ex rel. Curyea v. Wells, 92 Neb. 337, 138 N. W. 165, 41 L. R. A. N. S. 1088, and so applied it in Smith v. United States Fidelity & Guaranty Co., 142 Neb. 321, 6 N. W. 2d 81. The latter opinion also held: "An insurance policy is a contract, and where there is no uncertainty as to its meaning and the same is legal and not opposed to public policy, it will be enforced as it is made.

" 'In construing terms used in a policy of insurance, they are to be taken in their plain and popular sense.' Hamilton v. Mutual Benefit Health & Accident Ass'n, 133 Neb. 464, 275 N. W. 863.

"In construing a written instrument for the purpose of ascertaining the intention of the parties, resort must be had to the instrument as a whole and, if possible, effect must be given to every part thereof.

"The parties to a contract of insurance may contract for any lawful coverage. An insurance company has the right to limit its liability and to impose restrictions and conditions upon its contractual obligations not inconsistent with public policy, or statute." See, also, Koehn v. Union Fire Ins. Co., 152 Neb. 254, 40 N. W. 2d 874; Mutual Benefit Health & Accident Assn. v. Milder, 152 Neb. 519, 41 N. W. 2d 780; Palmer v. Capitol Life Ins. Co., 157 Neb. 760, 61 N. W. 2d 396.

Black's Law Dictionary (3d Ed.), p. 1281, citing authorities, defines "occur" as: "To happen. * * * To arise; begin."

In 67 C. J. S., Occur, p. 84, citing State ex rel. Curyea v. Wells, *supra*, and numerous other authorities, "occur" is defined as: "A word said to be an ordinary one and without technical import. It carries to the mind a sense of origin, beginning, not of mere existence or of continuation; and in its generally accepted and most popular sense the word 'occur' means to happen. It is also defined as meaning to appear; to be found; to be met with; to meet one's eyes; to present itself; to befall; to take place; to begin; to arise."

Creighton v. Metropolitan Life Ins. Co., 181 Misc. 847, 42 N. Y. S. 2d 213, is as much in point with the case at bar as any case cited or which we have been able to find. It was an action to recover disability benefits under a policy of insurance which provided for recovery thereof if plaintiff became disabled " 'as the result of bodily injury or disease occurring after the issuance of said policy.' " The question presented for determination involved an interpretation and application of the word "occurring" as so used in the policy. In that connection, the court, citing numerous authorities, concluded that the word "occur" in its generally

accepted and most popular sense means " 'to happen,' " and carried " 'to the mind a sense of origin, beginning, not of mere existence nor of continuation.' " It follows that: " 'A disease does not occur or originate within the meaning of the policy until it becomes a disease in the general acceptation of that term.' " Recovery in that case was denied because plaintiff's disease and disability did not occur or originate after issuance of the policy. In that respect such opinion distinguished Reiser v. Metropolitan Life Ins. Co., 262 App. Div. 171, 28 N. Y. S. 2d 283, wherein plaintiff's condition was unknown prior to issuance of the policy and the first manifestation of the disease and disability occurred some 10 years after the issuance of the policy.

In From v. General American Life Ins. Co., 132 Neb. 731, 273 N. W. 36, this court, citing authorities, said: "Provision in an insurance policy for payment of disability benefits when insured has become totally and permanently disabled, and which further provides that the original cause of the disability must have occurred or been contracted after the first annual premium has been paid on the policy, covers a disability caused by a disease first manifesting itself after the period mentioned." See, also, Uribe v. Woods Bros. Constr. Co., 124 Neb. 243, 246 N. W. 233.

As stated in 45 C. J. S., Insurance, § 753, p. 781, citing authorities: "The parties may limit the coverage of the policy to certain particular accidents and risks or causes of loss, and may expressly except other risks or causes of loss therefrom." Also, as said in § 776, p. 810, citing authorities: "The words 'bodily infirmity or disease,' as used in a provision exempting insurer from liability for injuries caused thereby, refer only to an ailment or disease of a settled character, or one so considerable or significant that it would be characterized as such in the common speech of men, or some physical disturbance to which insured is subject, and of which the attack which caused his injury is in some

measure a recurrence." Further, as said in § 893, p. 971, citing authorities: "Policy provisions precluding recovery for disease or disability originating before a prescribed time have been held to be valid, and such a condition is of the essence of the contract and its fulfillment is a prerequisite to recovery, as where liability is limited to cases where illness begins after issuance of the policy, or at or after a specified period from the date of the policy."

The case at bar is not one comparable with those cited in 29 Am. Jur., Insurance, § 835, p. 636, and 45 C. J. S., Insurance, § 725, p. 721, wherein the insurer issued a policy without requiring any application, or omitted in an application to make inquiry as to a ground of forfeiture or nonliability provided for in the policy, and thereby waived its right to insist on a breach at time of issuance of the policy.

In the case at bar, plaintiff was required to make an application and certify therein that he was "currently receiving incentive flight pay," which was not a matter of mere opinion or judgment but was a factual representation peculiarly within his own knowledge, and a condition which was the very essence of the contract and the basis upon which defendant relied and was induced to issue the policy and assume the risk. As a matter of fact, as hereinafter observed, plaintiff was not receiving incentive flight pay as certified by him on October 8, 1956, and he never did thereafter receive it or qualify therefor.

In the light of authorities heretofore stated, we have examined the record. As summarized, it discloses the following undisputed relevant and material evidence: Plaintiff was a captain in the United States Air Force. He served in the infantry from December 1940 until the middle of 1942. He then transferred to the air corps and served as a pilot of B17 bombers until January 1946, during which period he flew several combat missions. Thereafter he was a civilian until March

1953, when he entered the United States Air Force. He was ultimately transferred to Lincoln Air Force Base in September 1954, to fly B47 bombers as a pilot. He has lived in Lincoln since that time, and on April 1, 1956, he was an aircraft commander, the officer who actively flys the plane and is in command thereof. Incentive flight pay is the extra money which all air force personnel are paid for actually flying at least 4 hours a month. Based on his rank and service, plaintiff would receive $205 a month incentive flight pay, which could be accumulated over a 3-months' period, if he qualified therefor by meeting such actual flying requirements.

On April 1, 1956, until about 1 p. m., plaintiff had flying status and was theretofore earning incentive flight pay, but he was removed from flying status as of that date until June 27, 1956, for physical disability caused by paroxysmal tachycardia of unknown origin. In that connection, on April 1, 1956, plaintiff had been on leave 2 days, and while playing golf in Fort Dodge, Iowa, plaintiff had a sudden feeling like a severe case of acute indigestion. He had a terrific pressure right in the center of his chest. It was hard to get his breath. There was a great amount of sweating. He had such a rapid heart beat that he actually thought his heart was going to jump out of his body. He grayed out and had a tingling sensation in his arm, but he did not become unconscious. Such attack or seizure lasted very severely for about one-half hour, then eased off, but left him very weak for several hours thereafter.

A family physician in Fort Dodge was called and plaintiff was removed to Lutheran Hospital there. He stayed in such hospital 5 or 6 days while medical tests were made to determine whether or not he had any impairment of heart function or what was the cause of the attack. In such respect, plaintiff knew of no diagnosis that he had an organic defect, but he knew they suspected that he had paroxysmal auricular tachycardia.

The fact is that the original diagnosis in Fort Dodge was paroxysmal tachycardia of unknown origin. After leaving the Lutheran Hospital, plaintiff returned to Lincoln on April 6 or 7, 1956, where he reported to his superiors, and reported his attack or seizure to the medical officer of the Lincoln Air Force Base. That same day he was placed in the base hospital where further medical tests were made as suggested by plaintiff's family physician to determine if possible what caused plaintiff's attack April 1, 1956. There they suspected cardiac or gastro-intestinal disease, and found none, but found that plaintiff had paroxysmal tachycardia, which may generally be caused or precipitated by functional or organic pathology.

In that connection, on April 23, 1956, and again on April 30, 1956, the commanding officer of the hospital at Lincoln Air Force Base examined plaintiff and made a like diagnosis. On the latter date, plaintiff told such officer that: "* * * he was desirous of getting out of the B47 program." Also, an interval history appearing in a medical report of plaintiff's condition, dated June 1, 1956, recited that plaintiff had lost 15 pounds in weight in the past 5 months, and that he had excessive worry after his illness on April 1, 1956. In that situation, plaintiff, having had no other such attacks, was restored to flying status on June 27, 1956, and he performed his duties and earned flight pay until about September 6, 1956, when he had another such attack or seizure which lasted 15 minutes to one-half hour while on a high flying mission.

Plaintiff reported such attack to the medical officer at the Lincoln Air Force Base on September 10, 1956, and appeared on sick call September 14, 1956, so he was again removed from flying status and admitted to the Lincoln Air Force Base Hospital on September 17, 1956, where his condition was again diagnosed as tachycardia, paroxysmal, cause undetermined. Thereafter, on September 19, 1956, plaintiff was transferred to

Sheppard Air Force Base Hospital in Texas for further evaluation. There his medical summary, dated September 27, 1956, was made and returned to Lincoln Air Force Base after an examination of plaintiff. It recited the history of plaintiff's attack or seizure on April 1, 1956; the diagnosis at the Fort Dodge hospital that plaintiff probably had paroxysmal auricular tachycardia; and the like attack or seizure which plaintiff had on September 6, 1956, while on a high flying mission. The diagnosis there after examination was suspected paroxysmal auricular tachycardia, transient, and the report said: "He is to be returned to his base with the same diagnosis he came in with." It will be noted that plaintiff admittedly never had any accidental bodily injury, and that his alleged ground of recovery was that he had a disease and disability caused thereby which could, as we view it, have been none other than paroxysmal auricular tachycardia which occurred and manifested itself prior to the period for which plaintiff was covered by the policy.

In that connection, by order dated October 10, 1956, plaintiff was restored to flying status as of October 8, 1956, the very day upon which he made application for the policy. In that application he certified: "I am currently receiving incentive flight pay," which admittedly was not true, the fact being that he was not then receiving such pay, and that he never flew again after September 6, 1956, or after October 8, 1956. Plaintiff was officially notified that as of November 17, 1956, he was separated from flying status due to physical disqualification, and on December 10, 1956, after an examination, it was recommended that: "* * * subject officer (plaintiff) be permantly (sic) removed from flying status" because of "Diagnosis * * * Tachycardia, paroxysmal, cause unknown," and he was so removed. However, it is conclusive that such recommendation and order was admittedly made and based upon nothing that occurred after October 8, 1956. Plaintiff testified

that after receiving his certificate he had several attacks similar to those in April and September, 1956. However, plaintiff admitted that he had the same kind of attacks before October 8, 1956, and thereafter, as he had on April 1, 1956; that there never was anything different in such attacks from that which he had on April 1, 1956; that there was nothing new in his physical condition in any sense that occurred after October 8, 1956, to account for his grounding on November 17, 1956, and December 10, 1956; that it all occurred before October 8, 1956, and not afterward; and that no new examinations were made of him between October 8, 1956, and December 10, 1956. Plaintiff testified that no examinations were made of him between October 8, 1956, and November 17, 1956, when he was suspended from flying, but that a medical examination was made on December 10, 1956, after an attack in November 1956, which resulted in the same diagnosis previously made, and it was recommended that he should be permanently grounded for disability, based on nothing different than a diagnosis of paroxysmal auricular tachycardia, as it always had been since April 1, 1956. In that connection, the commanding officer of the hospital at the Lincoln Air Force Base testified that he had custody of all plaintiff's medical records, which did not indicate that plaintiff had had any attack between September 12, 1956, and December 10, 1956, although complaints thereof may have been informally made. He testified that on December 10, 1956, plaintiff's condition was again diagnosed as "tachycardia, paroxysmal, cause undetermined," but which could have been caused or precipitated by functional or organic pathology, and that no new or different condition or situation arose after September 27, 1956, which caused plaintiff to be grounded. He also testified that the disabling effects of plaintiff's condition are that such attacks may recur and that plaintiff's repeated attacks are abnormal, disabling, and not compatible with flying safety, which

caused his temporary and permanent groundings, based solely on his history and diagnosis between April 1, 1956, and September 27, 1956, the date of the report made by Sheppard Air Force Base Hospital, and nothing that occurred thereafter.

For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiff.

AFFIRMED.

MESSMORE, J., participating on briefs.