MARIE E. CHARD, GUARDIAN OF AMELIA A. CHARD, APPELLEE, v. NEW YORK LIFE INSURANCE COMPANY, APPELLANT.

16 N. W. 2d 858

FILED DECEMBER 22, 1944. No. 31791.

*Brown, Crossman, West, Barton & Fitch* and *John O. Sheldahl,* for appellant.

*Merril R. Reller* and *John McArthur, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CHAPPELL, J.

This is an action at law prosecuted by Marie E. Chard, Guardian of Ameila A. Chard, as plaintiff, against the New York Life Insurance Company, defendant, to recover certain monthly total disability benefits alleged to have accrued under and by virtue of the provisions of an insurance policy purchased by the ward and effective as of October 18, 1930. The action was originally filed in the municipal court for Lincoln, Nebraska, where plaintiff obtained a judgment from which defendant appealed to the district court for Lancaster county. Upon trial there a jury awarded plaintiff a verdict for $393.04. The trial court entered judgment upon the verdict and allowed plaintiff's attorney a fee of $150. Motion for new trial was overruled and defendant appeals to this court, assigning as error that the verdict and judgment are not sustained by the evidence and are contrary to law; that the trial court erred in overruling defendant's alternative motion made at the conclusion of all the evidence to dismiss or instruct a verdict for defendant; and erred in the refusal and giving of certain instructions. We decide that the trial court erred in the giving of certain instructions which were prejudicial to defendant's rights, but that defendant's other assignments of error are without merit.

It is conceded that the policy was in full force and effect during the period of the alleged total disability and that total disability payments thereunder were approved and made by defendant for twenty months just preceding January 15, 1934, and from April, 1934, until they were discontinued on January 13, 1943.

The sole issue presented to the trial court by the pleadings and the evidence was whether the insured ward was totally disabled within the meaning of the policy from January 13, 1943, to and including August, 1943.

The policy provides that, "Upon receipt by the Company at its Home Office of due proof, as hereinafter provided, that the Insured has become totally disabled by bodily injury or disease so that he is and will be thereby wholly prevented from performing any work, following any occupation or engaging in any business for remuneration or profit, and that such disability has already continued uninterruptedly for a period of at least four months (such total disability of such duration being presumed to be permanent only for the purpose of determining liability hereunder), * * * ." Thereafter followed provisions for waiver of premiums and payment of $49.13 per month to insured during continuance of total disability. The policy also contained a defeasance section which provided, "Before making any income payment or waiving any premium, the Company may demand due proof of the continuance of total disability, but such proof will not be required oftener than once a year after such disability has continued for two full years. If such proof shall not be furnished, or if at any time the Insured shall become able to perform any work, follow any occupation, or engage in any business for remuneration or profit, no further income payments shall be made nor premiums waived * * * ."

For many years this court has followed the rule that, "A contract of insurance should be given a reasonable construction so as to effectuate the purpose for which it was made. In cases of doubt, it is to be liberally construed in favor of the insured." *Hamblin v. Equitable Life Assur-*

*ance Society*, 124 Neb. 841, 248 N. W. 397. See, also, *Oswald v. Equitable Life Assurance Society*, 128 Neb. 173, 258 N. W. 41. In *Woods v. Central States Life Ins. Co.*, 132 Neb. 261, 271 N. W. 850, both the insurance clause and the cessation or conduct clause were almost identical with those here involved. In that connection this court in its opinion quoted from and approved a statement appearing in *Stoner v. New York Life Ins. Co.*, (Mo. App.) 90 S. W. 2d 784, a similar case, to the effect that, "There is then no conflict between the two clauses. The latter has no effect to limit or vary the former. It is but declaratory of the former." Following the quotation this court said: "It is clear, therefore, that the addition of the cessation clause in no way changes the liability created in the first-quoted section (the insuring clause) of the policy." Upon this premise the court in construing such policy provisions, held that, "A policy of insurance providing for total disability benefits when the insured 'has become wholly and permanently disabled by bodily injury or disease, so that he is and will be permanently, continuously and wholly prevented thereby from performing any work for compensation or profit, or from following any gainful occupation,' means inability to do all the substantial and material acts necessary to the prosecution of the insured's business or occupation in his customary and usual manner." The rule above stated is in accord with the great weight of authority and is *stare decisis* in this jurisdiction. See Annotations, 79 A. L. R. 857; 98 A. L. R. 789. It was followed and amplified in *From v. General American Life Ins. Co.*, 132 Neb. 731, 273 N. W. 36, wherein it was held that, "Where an insurance policy provides for the payment of disability benefits when insured has become totally and permanently disabled from bodily disease, so that he is thereby and will be permanently, continuously and wholly prevented from pursuing any occupation whatsoever for remuneration or profit, such provision does not mean that the insured must be absolutely and literally helpless and unable to do anything. The term 'occupation,' as used in the policy, means the occupation or

employment of the insured in which he was engaged or for which he was fitted. The words 'total and permanent disability' do not mean that the insured must be rendered absolutely and totally unable to perform every duty of his occupation in order to recover. It is sufficient in that respect if the insured is disabled by bodily disease from performing one or more of the necessary acts of his occupation." See, also, *Reinsch v. Travelers Ins. Co.*, 133 Neb. 249, 274 N. W. 572; *Bennett v. Metropolitan Life Ins. Co.*, 136 Neb. 785, 287 N. W. 609. It was also held in *Miceli v. Equitable Life Assurance Society*, 138 Neb. 367, 293 N. W. 112, that, "If an insured's ability to do substantially and practically any of the material acts necessary for the transaction of his usual business or vocation is affected, or if, while attempting to do all of such acts, he is jeopardizing his health and safety, or ought not actually to be so engaged, he will be held to be totally disabled within the meaning of a disability provision in an insurance policy." Upon motion for rehearing in such *Miceli* case, in a supplemental opinion found at p. 374, this court adhered to its former opinion and held that, "Inability to do any of the material acts necessary for the transaction of an insured's usual business or vocation, which prevent the substantial and practical conduct or pursuit of such business or vocation, is equivalent, in insurance law, to inability to do all the substantial and material acts necessary to the prosecution of the insured's business or occupation in his customary and usual manner." See, also, *Reinsch v. Pacific Mutual Life Ins. Co.*, 140 Neb. 225, 299 N. W. 632. It is well established that where different minds may reasonably draw different conclusions as to whether the facts establish liability for total disability, it is the duty of the trial court to submit the question to the jury under appropriate instructions for their decision. *Schultz v. John Hancock Mutual Life Ins. Co.*, 134 Neb. 885, 280 N. W. 165. Also, that the trial court should not direct the verdict of the jury unless the evidence is so clear upon every point upon which the verdict must depend that reasonable minds could not come to any other conclu-

sion. *Oswald v. Equitable Life Assurance Society, supra.*

Bearing these rules in mind, the evidence becomes important to decision. The record discloses that the insured graduated from the University of Nebraska with honors, majoring in romance languages. Her occupation or profession at the time the insurance contract was made and at the time that total disability first resulted, was that of a French instructor, tutor and interpreter. She has had no training or experience qualifying her to engage in other occupations or professions. In April, 1932, while a French instructor in the senior high school at Beatrice, Nebraska, and while tutoring special students there, she became seriously ill, had a major surgical operation, and suffered a nervous and mental breakdown causing disability which resulted in private hospitalization and treatment by physicians and psychiatrists for approximately two years. In the early part of this period she made claim to defendant for total disability benefits. It is admitted by defendant that her claim was approved and such payments were made for twenty months and until discontinued in January, 1934, at which time the insured returned to her employment. She suffered a relapse within a short time, requiring further medical treatments with hospitalization and was unable to continue with her teaching. It is admitted by defendant that the insured again made claim for total disability benefits on or about April 13, 1934, which claim was approved and such payments were made by defendant from that time until January 13, 1943.

On or about September 29, 1934, this plaintiff, the insured's mother, was appointed guardian for the insured, is now serving, and has served as such ever since that time and has handled all money matters for the insured. The guardian took the insured to Colorado for her health but upon failure to obtain relief they returned to Omaha where competent physicians and psychiatrists were consulted and she was again placed in a private hospital for many months. Physicians have treated and prescribed for her from that time up to the trial. She has improved in health. How-

ever, her physician testified that she has not yet recovered and gave it as his opinion that she was not able to resume her teaching; that for her to do so would be dangerous and jeopardize her health. The insured personally appeared at the trial and testified that she had attempted to tutor and teach French, but was unable to do so. She testified that she is not well, has difficulty in concentration of thought, in performing routine tasks, becomes easily exhausted, is unable to handle her own affairs, and cannot mingle with crowds or handle numbers of people as required in teaching.

The specialist in nervous and mental diseases who examined the insured at the request of defendant a week before the trial was called as a witness for defendant. He gave as his opinion that if insured desired she could resume her teaching but that she was not yet perfectly normal; that she was sensitive about her personal life and did not realize fully the nature of her mental breakdown; that she was too much concerned about herself physically; protected her sensitive feelings; is deceived by her own emotions as to the nature of her illness; is laboring under misinterpretation and misconception; and that based upon the symptoms present should receive psychiatric treatment, in form psychological, for the purpose of establishing insight and understanding into the emotional nature of her illness so that she could gradually regain emotional self-confidence, and establish as complete insight as possible.

The difficulty with defendant company upon the policy of insurance arose when insured's physicians arrived at a time in her treatment when they thought she might be rehabilitated in employment. With this in mind, being friendly with the management of the Blackstone hotel, they prevailed upon the latter, because of the present labor shortage, to employ the insured for that purpose. Beginning in December, 1942, she worked a few days in the salad department of the hotel at the rate of $60 a month. On January 15, 1943, she began work as a night clerk, from 11 p m. to 7 a. m., six days a week, at $85 a month, which was increased to $100 in September, 1943, at a time when the sal-

aries of other employees were also raised. The Blackstone hotel is what is known as an apartment hotel, located approximately twenty blocks from the business district of the city of Omaha. The large proportion of its guests reside permanently at the hotel. Registrations after 11 p. m. are very few and they generally follow previous reservations. The cashiers of the restaurant and bar after their closing time at night turn in reports at the office showing how much money they have taken in. It was insured's duty to make a summary of these reports for the information of the manager, register guests arriving after 11 p. m., and post charge accounts of guests for purchases charged by them in the cafe or bar during the night. Her work is done in comparative quiet, with lack of confusion, and she is not required to meet many people. The employment does not require exceptional skill, tact, or great mental concentration. She does the work fairly well, but makes many mistakes ordinarily not made by others and for that reason has been required upon many occasions to stay overtime to complete her duties.

Applying the rules of law heretofore set forth to these circumstances appearing in the evidence, we can only conclude that whether the insured was totally disabled during the period involved was a question for the jury to determine. Therefore, the trial court did not err in overruling defendant's motion to dismiss or direct a verdict for defendant at the conclusion of all the evidence.

We turn to a consideration of the instructions and conclude that defendant's requested instruction No. 1 was clearly contrary to the rules of law heretofore set forth and the court did not err in refusing it. It follows that instructions No. 4 and No. 6 given by the trial court on its own motion were not erroneous since they clearly do conform to the rules of law heretofore stated. Instruction No. 6 is not subject to criticism because it is predicated upon a conditional finding of facts by the jury rather than an abstract statement of a rule of law defining total disability. "An instruction which merely points out the legal consequence of

certain facts, of which there is evidence, in case the jury find them to be established, is not erroneous." *Schmuck v. Hill,* 2 Neb. (Unof.) 79, 96 N. W. 158. See, also, 1 Randall's Instructions to Juries, 165, sec. 86; *Frizzell v. Omaha Street Ry. Co.,* 124 Fed. 176, 59 C. C. A. 382. Further, the words, "for any considerable time in the future" as they appear in instruction No. 6 were favorable to rather than prejudicial to defendant.

However, instructions No. 2 and No. 7 given by the trial court on its own motion present a more serious situation. Instruction No. 2 reads as follows: "The burden of proof is upon the plaintiff to establish all of the material allegations of her petition by a preponderance of the evidence, except as the same are admitted or shown by defendant in its answer or on trial, *and except as she may have pleaded or shown herself in making her case."* (Italics supplied.) That part of the instruction to and concluding with the word "trial" is proper and without criticism. However, the effect of the words "and except as she may have pleaded or shown herself in making her case" is to remove the burden theretofore imposed and place no burden of proof whatever upon the plaintiff. The applicable rule in such a situation is found in 64 C. J. 710, wherein it is stated: "Instructions relating to the burden of proof must embody a correct statement of the law, they must also be sufficient, but not too broad, ambiguous, or confusing and misleading. So, too, the instructions should not impose a greater burden on either party than the law requires nor relieve a person of the burden imposed by law."

As heretofore stated the period of time involved, and for which plaintiff claimed recovery for total disability, was from January 13, 1943, to and including August, 1943. It is admitted in the answer and in the evidence that plaintiff had been totally disabled during a previous period and that defendant had made payments for total disability to her for twenty months from 1932 to January 13, 1934, and to her or her guardian from April, 1934, to January 13, 1943, but it is alleged by defendant that on that date she had fully

recovered. Nevertheless, the trial court in instruction No. 7 told the jury, "On the other hand, if you find from the evidence that the insured *was never under such disability that she could not return to her teaching* or that *at the time of the commencement of this action she had recovered from her indisposition or ailment* and was able either to return to her teaching or to gain a livelihood elsewhere for a considerable and reasonable time in the future, then and in such case you should find she is not entitled to recover and your verdict should be in favor of the defendant." (Italics supplied.)

In this connection we find that no issue was made by the pleadings and the evidence that plaintiff "was never under such disability that she could not return to her teaching," and the time of her alleged recovery of health was January 13, 1943, and not "at the time of the commencement of this action" in August, 1943. The effect of the first part above quoted was to deny defendant the opportunity to recover a verdict because defendant had admitted both in the answer and in the evidence that the insured had been totally disabled in the past and prior to January 13, 1943. The effect of the second part above quoted was to postpone the time of the insured's recovery from total disability until after the entire period for which plaintiff was claiming total disability, in which event it would be impossible for defendant to recover a verdict.

It is stated in 64 C. J. 704, that, "An instruction which misstates the issues or defenses and has a tendency to confuse or mislead the jury is erroneous, * * * ." Also, in Abbott, Civil Jury Trials (3d ed.) 676, sec. 19, "But it is error to submit to the jury, as a disputed question of fact for their determination, an issue which has been admitted by the pleadings, or one which is established by the uncontradicted evidence."

This court has held that, "Instructions which allow the jury to find the existence of elements of a cause of action not stated in the pleadings are erroneous." *Chicago, B. & Q. R. Co. v. Clinebell,* 5 Neb. (Unof.) 603, 99 N. W. 839.

Also, that "The trial judge's statement of the issues to the jury should state the issues as the case is being finally presented to the jury on the pleadings and the evidence adduced." *Dawson County Irrigation Co. v. Dawson County,* 103 Neb. 692, 173 N. W. 696. See, also, *Citizens Nat. Bank v. Sporn,* 115 Neb. 875, 215 N. W. 120. And, "It is reversible error to instruct the jury upon a question not raised by the pleadings nor applicable to the evidence, when such instructions have a tendency to mislead the jury or have a prejudicial effect upon the party complaining." *Sabin v. Cameron,* 82 Neb. 106, 117 N. W. 95. See, also, *Shepard v. Hamaker,* 114 Neb. 42, 205 N. W. 937.

We have not overlooked the rule announced in *Roberts v. Carlson,* 142 Neb. 851, 8 N. W. 2d 175, to the effect that, "In determining whether there is error in the giving of a sentence in an instruction, it must be considered in connection with the instruction of which it is a part and all other instructions given by the court. The true meaning of instructions is to be determined not from a separate phrase or paragraph, but by considering all that is said on each subject or branch of the case." However, after applying it to the case at bar we can only conclude that instructions No. 2 and No. 7 given to the jury by the trial court on its own motion were clearly erroneous and prejudicial to defendant's rights. For that reason the judgment is hereby reversed and the cause remanded for a new trial.

REVERSED.