IN RE APPLICATION OF ELMER A. MORITZ. ELMER A. MORITZ APPELLANT, V. THE NEBRASKA STATE RAILWAY COMMISSION ET AL., APPELLEES.

23 N. W. 2d 545

FILED JUNE 21, 1946. No. 32056.

*Hartigan & Skultety* and *R. E. Powell,* for appellant.

*Hubka & Hubka, Walter R. Johnson, Attorney General, Erwin A. Jones, C. J. Putt, W. E. Treadway,* and *Henry Schulteis, Jr.,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

Elmer A. Moritz, doing business as Fairbury-Lincoln Stage Line, hereinafter called applicant, made application to the Nebraska State Railway Commission on October 17, 1944, for a certificate of convenience and necessity authorizing an extension, thereby permitting him to operate intrastate single-line bus service between Lincoln and Fairbury upon the paved highway, via Beatrice. George Cowsky, doing business as Superior-Beatrice Bus Line, and Santa Fe Trail Transportation Company protested. They will hereinafter be called Cowsky and Santa Fe respectively. After a hearing on the merits the commission denied the application. Motion for rehearing was overruled and applicant appealed to this court, setting forth some 26 separate assignments of error. However, an examination discloses that all of them may be summarized in the contention that the denial was contrary to law and not supported by the evidence, therefore unreasonable and arbitrary. We find that the assignments cannot be sustained.

Counsel for two appellees having first raised the question by motion, which was overruled by this court, again renew the motion and argue in the briefs that the bill of exceptions should be quashed and applicant's appeal dismissed for the reason that the bill of exceptions was not timely settled and filed in this court. We will first dispose of that question.

The facts in that regard are that the application was heard on the merits by an examiner November 28 and 29, 1944. His report recommending denial was filed January 15, 1945. The applicant filed exceptions thereto February 7, 1945, upon which oral argument was had April 4, 1945, and leave given parties to file briefs. The evidence taken

at the hearing on the merits was reduced to writing, duly certified by the commission's official stenographer as true and correct, and filed with the commission on March 2, 1945. The final order of the commission denying the application was entered June 5, 1945. Motion for rehearing timely filed was overruled by order of the commission on July 28, 1945, a copy of which was not forwarded to applicant until September 1, 1945. Notice of appeal and praecipe for a bill of exceptions and transcript were filed by the applicant on October 20, 1945. On the same day the statutory docket fee was deposited by him with the commission and a cost bond was furnished, which the commission approved on October 24, 1945. A properly certified transcript was also filed in this court on October 27, 1945. Thereafter, the bill of exceptions was certified as true and correct by the chairman of the commission, under the seal of the commission, and counsel for all the parties voluntarily filed a stipulation with the commission agreeing that it was true and correct with certain agreed exceptions on March 4, 1946, the date upon which it was filed in this court. Thereafter by stipulations of counsel brief day of appellees was extended to April 20, 1946, and the cause was argued and submitted to this court on the merits May 7, 1946.

In the light thereof we find that the answer to the question appears in the statutes and this court's rules of procedure. Section 75-405, R. S. 1943, provides: "If any * * * common carrier, or any other person or persons affected thereby, shall be dissatisfied with the decision of the State Railway Commission affirming, revising, annulling or modifying any * * * rule, charge, order, act or regulation made or adopted by them upon which there has been a hearing before the commission, except as otherwise expressly provided for herein, such dissatisfied * * * common carrier, person or persons affected may institute proceedings in the Supreme Court of Nebraska to reverse, vacate or modify the order complained of; Provided, however, the time for appeal from the orders and rulings of the commission to the

Supreme Court shall be limited to three months."

Section 75-406, R. S. 1943, provides: "The procedure to obtain such reversal, modification or vacation * * * shall be governed by the same provisions now in force with reference to appeals and error proceedings from the district courts to the Supreme Court of Nebraska; Provided, no motion for a new trial shall be required to be filed, but instead a motion for rehearing shall be filed within ten days after the mailing of a copy of any order to the persons affected, and the time for appeal shall run from the date of the ruling of the commission on the motion for rehearing."

Section 75-407, R. S. 1943, provides: "The evidence presented before the State Railway Commission, as reported by its official stenographer and reduced to writing, shall be duly certified to by the stenographer and the chairman of the commission as the true bill of exceptions, which, together with the pleadings and filings duly certified in the case under the seal of the commission, shall constitute the complete record and the evidence upon which the case shall be presented to the appellate court."

Rule 1c of this court provides: "In an appeal from an order of the State Railway Commission or other tribunals from which an appeal can be taken direct to this court the procedure shall be similar to that provided for in appeals from the district court."

Rule 7c of this court provides: "The bill of exceptions must be filed in the district court and certified by the clerk of such court, and when so filed and certified, may be filed in this court at any time prior to the submission of the case."

It is now elementary that upon the filing of a notice of appeal and deposit of the docket fee with the clerk of the district court within three months after overruling of motion for new trial, as provided in section 25-1912, R. S. 1943, the jurisdiction of the Supreme Court over the cause is then complete and no other step is deemed jurisdictional. Madi-

son County v. Crippen, 143 Neb. 474, 10 N. W. 2d 260; Glissmann v. Bauermeister, 141 Neb. 288, 3 N. W. 2d 555. It follows, as a matter of course, that the filing of a notice of appeal and deposit of a docket fee with the railway commission within three months from the overruling of a motion for rehearing accomplishes the same result.

An examination of the statutes involved discloses that section 75-407, R. S. 1943, is clearly a special statutory provision with regard to a particular subject, which is part of an act complete within itself, thereby superseding and governing the general provisions of section 25-1140, R. S. 1943, previously enacted, which relates to and controls the settling of bills of exceptions in cases appealed from other boards or tribunals to the district court or from the district court to the Supreme Court. The situation in the case at bar is, therefore, clearly distinguishable from Field v. Nebraska Telephone Co., 74 Neb. 419, 104 N. W. 932.

Section 75-407, R. S. 1943, specifically provides only that the evidence as reported by the commission's official stenographer and reduced to writing shall be certified to by the official stenographer and the chairman of the commission, under the official seal thereof, as the true bill of exceptions which shall constitute the evidence upon which the case shall be presented to this court. There is no provision therein requiring that it be done within any limited period. In this case the evidence certified by the official stenographer was filed with the commission and has been available to all the parties since March 2, 1945, a date three months prior even to the final order of denial entered by the commission. Further, the bill of exceptions was properly certified to be true and correct by the chairman of the commission, as required by statute, was voluntarily settled by stipulation of counsel as true and correct, and was filed in this court prior to submission of the case in conformity to the rules of this court. Under such circumstances we conclude that appellees' motion to quash the bill of exceptions and dismiss applicant's appeal was properly overruled and that the

appeal should be decided on its merits.

We turn then to the applicant's assignments of error and examine the record and the law to determine whether they have merit. In the brief counsel for applicant cites and ably discusses many cases from other jurisdictions which in our view do not require separate discussion for the reason that they are distinguishable on the facts or the law and to do so would extend this opinion beyond propriety or necessity.

It is elementary that the grant or refusal of a certificate of convenience and necessity in such cases is within the constitutional and legislative authority of the Nebraska State Railway Commission. In Effenberger v. Marconnit, 135 Neb. 558, 283 N. W. 223, it was said: "We necessarily conclude that a certificate of convenience and necessity is in the nature of a permit or license and that it is not property in any legal or constitutional sense. It is a mere license that can be amended or revoked by the power authorized to issue it. Such being the case, it is personal in its character, is not transferable, and does not pass by succession. It is purely a regulatory measure that can vest no property right in the holder. This being true, the railway commission has the sole power to grant, amend, deny, revoke or transfer a certificate of convenience and necessity."

Section 75-222, R. S. 1943, specifically provides. "It is hereby declared to be the policy of the Legislature to (1) regulate transportation by motor carriers in intrastate commerce upon the public highways of Nebraska in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in, such transportation and among such carriers, in the public interest; (2) promote adequate, economical and efficient service by motor carriers, and reasonable charges therefor, without unjust discrimination, undue preferences or advantages, and unfair or destructive competitive practices; (3) improve the relations between, and coordinate transportation by, and

regulation of, motor carriers and other carriers; (4) develop and preserve a highway transportation system properly adapted to the needs of the commerce of Nebraska; * * *." Under the circumstances in this case we are unable to see how the order herein violated any of these provisions. We conclude it conformed to them.

It was held by this court in Furstenberg v. Omaha & Council Bluffs Street Railway Co., 132 Neb. 562, 272 N. W. 756: "Courts should review or interfere with administrative and legislative action of the railway commission only so far as is necessary to keep it within its jurisdiction and protect legal and constitutional rights.

"On an appeal to the Supreme Court from an order of the railway commission administrative or legislative in nature, the only questions to be determined are whether the railway commission acted within the scope of its authority and if the order complained of is reasonable and not arbitrarily made." See, also, Thomson v. Nebraska State Railway Commission, 142 Neb. 477, 6 N. W. 2d 607; Publix Cars, Inc., v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234.

It will be observed then that if the order of denial in the present case was supported by competent evidence it was not arbitrary or unreasonable and should be affirmed.

In that connection it will be well to first briefly recite the history of the operations over the highways involved. In November 1935, Cardinal Stage Lines Company applied for authority to operate a bus line over U. S. Highway No. 77 between Lincoln through Beatrice, to the Nebraska-Kansas state line. Permission was subsequently granted and such operations continued until 1937 when Santa Fe officially became the successor thereto and has continued such operations to the present time. It protests the present application on the ground that it now furnishes adequate service between Beatrice and Lincoln and is ready, willing, and able to furnish additional service if necessary.

In 1935, C. T. Wilson, doing business as Blue Valley

Coach applied for authority to operate a bus line between Superior and Beatrice via Fairbury, which was approved in March 1937. Wilson was a star mail route carrier operating over part of the bus line. In July 1938, appellee Cowsky succeeded Wilson as star mail route carrier and in October 1938, applied for authority to operate such bus service between Superior and Beatrice. Moritz, the present applicant, protested but authority was granted to Cowsky in December 1938, to operate bus service between Superior and Beatrice via Fairbury, serving intermediate towns. He has continued such operations since that time. In September 1943, Cowsky applied for authority to operate from Superior to Lincoln via Fairbury and Beatrice with closed doors between Beatrice and Lincoln. Moritz and Santa Fe both protested. The latter, however, requested permission to change its schedules and make direct interline transfer connections with Cowsky's western schedules which was granted and Cowsky's application was denied. That service has continued to the present time.

In September 1937, Moritz applied for authority to operate between Fairbury and Lincoln via Beatrice which was protested by Santa Fe's predecessor. In October 1937, Moritz amended his application requesting authority to operate between Lincoln and Deshler via Crete, Wilber, and Fairbury rather than via Beatrice which was granted. Thereupon the Chicago, B. & Q. R. R. Co. objected to the order but did not appear at a proposed second hearing whereat the authority was granted and that service has continued to the present time.

It appears that the present application of Moritz to operate between Lincoln and Fairbury via Beatrice over the paved highway is a request for extension of his operations. He does not contemplate or propose to abandon all of his operations between Lincoln and Deshler via Crete, Wilber, and Fairbury over which he testifies he is now suffering a loss. He intends, if authority is granted, to operate both routes, one round trip each way. That is, he intends to op-

erate one bus on each route instead of two buses on his present route.

We will first dispose of his contention that he has a priority with respect to the Fairbury-Lincoln bus business. The facts heretofore recited answer that question. We may assume for the purposes of this opinion that he has a priority over the route between Lincoln and Fairbury via Crete and Wilber, which he is presently operating. However, the facts are likewise as conclusive that Cowsky and Santa Fe have a priority over their present route between Lincoln and Fairbury via Beatrice by virtue of interline connections which applicant now seeks to duplicate except that his proposed time schedules will be different and his service will be single-line without the necessity to transfer from one bus to another at Beatrice.

Applicant contends that public convenience and necessity require single-line bus service over the shortest and only completely paved road between Lincoln and Fairbury. That route is concededly paved and four miles shorter than his present route, only one-half of which is paved. The other half is graveled highway, which according to applicant's evidence is dusty when dry, slippery when wet, and hilly with some narrow bridges and sharp curves. Otherwise his service is satisfactory and efficient. Evidence adduced for applicant is only to the effect that the paved route is more economical and preferable and that the interchange at Beatrice between Cowsky and Santa Fe connecting buses is inconvenient for some passengers. Otherwise the evidence is to the effect that their service was good, satisfactory service which always accommodated all passengers. There is evidence that some of the applicant's passengers because of the condition of the graveled portion of his present route had requested that he change his route over to the highway via Beatrice. There is no evidence that the Cowsky and Santa Fe service is not adequate or efficient or that any complaint thereof had been made or filed and they offer to furnish any additional service that the commission

might find necessary.

It will be noted that the applicant proposes to operate with closed doors between Beatrice and Lincoln so that he would take no business from Santa Fe between these points. For that reason we are unable to see upon what theory applicant contends in the brief that his application was a battle to break Santa Fe's monopoly on highway No. 77 between Lincoln and Beatrice.

On the other hand, Cowsky testified that if applicant were permitted to move one of his buses over to the proposed route he would not only take much of Cowsky's Fairbury to Beatrice business, whether destined to Lincoln or not, but would also take much of Cowsky's business from intermediate points between Fairbury and Beatrice, thereby economically forcing him to discontinue his service. The result of such discontinuance would be that some of the towns on the west end of Cowsky's route would have no transportation service whatever. The latter is verified by other evidence.

Applicant admits that on his present run from Fairbury to Lincoln 60 percent of his business originates at Fairbury with 40 percent at intermediate points. From Lincoln to Fairbury 50 percent of his business originates at Lincoln with 50 percent at intermediate points. It will be seen at once that if applicant is permitted to operate one bus between Fairbury and Lincoln via Beatrice, with closed doors between Lincoln and Beatrice as proposed by him, he will be required to obtain new business from some source to operate profitably. It appears that he would thus undoubtedly be in direct competition with Cowsky, who is already rendering adequate and efficient service in that field without complaint filed or made, except that it is inconvenient for some passengers to transfer from one bus directly to another without any delay. There is evidence that such operations would not only economically imperil Cowsky's operations but could as reasonably thus imperil the applicant's own operations.

In State, Railroad and Warehouse Commission v. Minneapolis & St. Louis Railroad Co., 209 Minn. 564, 297 N. W. 189, it is said: "The word 'necessity' is used in the act not in its lexicographical sense as being indespensibly requisite, nor as synonymous with the word 'convenience', but as contemplating a definite public need for a transportation service for which no reasonably adequate public service exists. * * * Mere convenience does not satisfy the statute; there must be both public convenience and necessity."

It is also stated in 1 Blashfield Cyclopedia of Automobile Law and Practice, § 371, p. 255: "Convenience and necessity are not synonymous terms, and both must be shown to warrant granting application to operate motor transportation line." In the present case the commission decided in effect that the route proposed by applicant might be convenient for some but that there was actually no necessity for such proposed service which, if granted, would hazard the investments and efficient service already existent. Cases from this jurisdiction sustain that decision.

In that conection it was said by this court in In re Yellow Cab & Baggage Co., 126 Neb. 138, 253 N. W. 80: "Such certificates have been required in many of the states with reference to the establishment and the extension of public utilities. The object in requiring such certificates is not only to protect those already occupying the field in their investment, but to protect the public as well. Unreasonable and unwarranted competition might be carried to the extent that it would not only injure and jeopardize the property of those operating the utilities, but might even result in destroying them. Such a result might be disastrous to the interests of the public. * * * It has now come to be recognized that unwarranted competition, especially in the line of public utilities, may be and frequently is harmful to the public interest, as well as to those engaged in such competition."

In In re Application of Chicago, B. & Q. R. R. Co., 138

Neb. 767, 295 N. W. 389, this court in discussing the regulatory powers and duties of the railway commission in respect to the service of common carriers, adopted the following statement of the law: " ' "The prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and conserve investments already made for this purpose. Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates. Neither the number of the individuals demanding other service nor the question of fares constitutes the entire question, but rather what the proper agency should be to furnish the best service to the public generally and continuously at the least cost. Anything which tends to cripple seriously or destroy an established system of transportation that is necessary to a community·is not a convenience and necessity for the public and its introduction would be a handicap rather than a help ultimately in such a field." 3 Pond. Public Utilities (4th ed.) sec. 775.' Publix Cars, Inc., v. Yellow Cab & Baggage Co., 130 Neb. 401, 265 N. W. 234." See, also, Furstenberg v. Omaha & Council Bluffs Street Railway Co., *supra*.

For the reasons heretofore stated, we necessarily conclude that the order of the railway commission denying the application was in conformity with law and that it was supported by competent evidence, therefore, it was not unreasonable or arbitrary, and it is affirmed.

AFFIRMED.