CHICAGO & NORTH WESTERN RAILWAY COMPANY,
APPELLANT, V. COUNTY BOARD OF DODGE COUNTY,
NEBRASKA, APPELLEE.

28 N. W. 2d 396

Filed July 11, 1947.    No. 32259.

*Wymer Dressler* and *Robert D. Neely,* for appellant.

*Charles H. Yost,* for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and TEWELL, District Judge.

CHAPPELL, J.

This is an appeal from an order of the Nebraska State Railway Commission holding that under sections 75-430, 75-431, and 75-432, R. S. 1943, it had no power or authority to hear and determine upon the merits an application to close a surface railroad crossing just outside the city limits, thereby routing its traffic over a viaduct constructed nearby but within the city limits. The Chicago & North Western Railway Company was applicant and the county board of Dodge County was respondent. They will hereinafter be designated respectively as plaintiff and defendant. Plaintiff's motion for rehearing was overruled, and it appealed to this court, assigning that the commission erred in so construing the statutes. We sustain plaintiff's contentions.

The factual situation was not in dispute. We will summarize it for clarity, and as a basis for discussion of the legal propositions involved. Congress had appropriated emergency relief funds for public works, a part of which was made available for the purpose of eliminating existing hazards to life at railroad grade crossings. At a special session of the Nebraska Legis-

lature, it enacted Laws of Nebraska, 1935, Sp. Sess., chapter 34, page 196, now chapter 18, article 6, R. S. 1943, authorizing and permitting certain cities, of which Fremont was one, to avail themselves of such funds by making contracts with the Department of Roads and Irrigation to construct viaducts over or subways under railroad tracks and "accomplish the elimination of grade crossings."

Thereunder, the city of Fremont, by ordinance, provided for the proposed construction of a viaduct over Bell Street and adjoining property at the east margin of the city limits. The city, the Department of Roads and Irrigation, and plaintiff, thereafter authoritatively entered into a contract for such construction, which was subsequently completed. State Highway No. 8 and U. S. Highway No. 30-South as relocated, crossed the right-of-way and tracks of plaintiff at grade on Bell Street, and the contract recited in substance that it was the purpose of the parties to separate the grades of street, highway, and tracks at that place, by constructing a viaduct in the interests of public safety and convenience.

At the time the viaduct was constructed, such highway was a diagonal paved road, the northerly end of which terminated at the junction with the north end of the viaduct and the south end of the highway passed over the surface crossing in dispute, approximately 2,000 feet east of the south end of the viaduct. The highway was rerouted over the viaduct as State Highway No. 275, connecting with the south end thereof. At the present time, a new highway has been constructed which connects with the south end of the viaduct.

There is a graveled highway north and south across plaintiff's tracks one-half mile east of old Highway No. 8, which anyone can use if he needs or desires to use a surface crossing rather than the viaduct. Over that crossing public travel comes into Fremont on First Street. The surface crossing over Bell Street was closed

by the city on October 26, 1937, after the viaduct was constructed, upon the ground that: "* * * the public safety and convenience requires that public travel be now diverted over said viaduct and be discontinued on said surface street across said railroad tracks."

In the meantime, however, the surface crossing involved remained open until March 18, 1942, when, upon application of plaintiff and hearing thereon, but without the filing of a petition by electors living within five miles of the road or the consent of a majority of the voters living within two miles of the road but not in the city, the county board by resolution agreeably ordered the crossing closed and barricaded, and the erection of signs directing public travel over the viaduct. In conformity therewith, its order was executed.

The resolution of the county board, after reflecting some of the salient facts heretofore set forth, recited that the object and purpose of constructing the viaduct "was to eliminate the grade crossings where they cross the tracks of the Chicago and North Western Railway Company just east of Bell Street and just outside of the city limits of Fremont, as well as the crossing at Bell Street itself * * *." The resolution also called attention to the fact that since the state highway department had "constructed a hard-surfaced highway from the intersection of old Highway #275 at the southeast corner of Fremont to connect with the south end of said viaduct," there was no longer any practical reason why travelers should use the old surface crossing over plaintiff's tracks and be subjected to its dangers. The concluding sentence ordered discontinuance of the crossing involved "for the duration of the war and until changed by duly constituted authority."

Regarding the dangers incident to continued use of the crossing in dispute, the evidence discloses that it passes over plaintiff's tracks which serve not only its main line but also its switching facilities and roundhouse lead. During the month of September 1946, some

1084 registered locomotives and train movements, an average of more than 36 per day, passed over the crossing. During that same period many nonregistered switching and other train movements also necessarily passed over it. After construction of the viaduct and before the crossing was closed in 1942, six accidents occurred thereat, in which one person was killed, five persons received personal injuries, and the automobiles involved were damaged. It is apparent that permanently closing the crossing will simply divert public travel safely over the viaduct to the same destinations.

Nevertheless, after consideration of petitions filed by certain electors residing within or near the city and others residing outside thereof, but within five miles of the crossing, alleging in substance that its original closing was unlawful, the county board by resolution August 22, 1946, ordered the crossing reopened for public use, effective within 30 days. Thereafter, on August 26, 1946, in conformity with section 75-431, R. S. 1943, plaintiff filed its application with the commission. Apparently, however, the crossing remained closed and the matter rests in status quo pending final decision thereon.

Without doubt, the construction of the viaduct was a public as distinguished from a local improvement. Hinman v. Temple, 133 Neb. 268, 274 N. W. 605, 111 A. L. R. 1217. It was constructed for the purpose of eliminating existing hazards to life at the railroad grade crossings involved, thereby promoting public convenience and safety. Therefore, the case at bar is an ideal one in which to invoke the commission's power and duties, if the Constitution and existent legislation will permit.

The State Railway Commission was created and its powers and duties were defined by section 20, article IV, Constitution of Nebraska. With reference to its powers and duties, that section provides: "The powers and duties of such commission shall include the regulation of rates, service and general control of common

carriers as the Legislature may provide by law. But, in the absence of specific legislation, the commission shall exercise the powers and perform the duties enumerated in this provision."

As will be observed, that constitutional provision is self-executing in the absence of specific legislative action, but the Legislature has the right by law to prescribe how the commission shall proceed and what authority it may exercise in the regulation and general control of common carriers. Therefore, when specific legislation is enacted upon a subject in relation thereto, such legislation preempts the field so occupied and thereby prescribes and controls the powers and duties of the commission. State v. Chicago & N. W. Ry. Co., 147 Neb. 970, 25 N. W. 2d 824; In re Application of Hergott, 145 Neb. 100, 15 N. W. 2d 418.

Pursuant to such authority, the Legislature enacted chapter 261, Laws of Nebraska, 1921, page 877, the title of which read: "AN ACT relating to the construction, repair and maintenance of all crossings of all railways and highways, both private and public; to place the supervision of the construction, repair and maintenance of such crossings outside of incorporated villages, towns and cities under the jurisdiction of the State Railway Commission; to require railways to construct and maintain crossings, gates, signs, signboards and warnings at crossings in such manner as the State Railway Commission shall require; to amend Section 3016 and to repeal said original section; to repeal Sections 3017, 3018, 6042, 6049, 6050 and 6051 of the Revised Statutes of Nebraska for 1913, and to repeal all other acts and parts of acts in conflict herewith."

The eighth section of the original act, after specifically repealing the above enumerated sections, also provided that: "* * * all other acts and parts of acts in conflict with the provisions of this Act, are hereby repealed." The 1921 act, therefore, must be the first to be considered. Its provisions now appear as sections 75-219, 75-

220, 75-221, 75-426, 75-427, 75-428, and 75-429, R. S. 1943.

A consideration of section 75-428, R. S. 1943, is of primary importance. It reads as follows: "The provisions of sections 75-219, 75-220, 75-221, 75-426, 75-427 and 75-429 shall not be construed as a limitation on the powers of the State Railway Commission which have heretofore been granted, but as supplemental and additional thereto. The powers herein granted shall not be construed as extending to the projection of a new public highway crossing or to the abandonment of an existing public crossing."

The last sentence of limitation in the above-quoted section is the one upon which the commission particularly relied in concluding that it had no power or authority to act in the case at bar. In that connection, if it were not for subsequent legislation enacted in 1925, the conclusion of the commission would doubtless have merit. However, in that year, the Legislature enacted chapter 163, Laws of Nebraska, 1925, page 425, which without doubt is controlling in appropriate situations such as that presented by plaintiff's application.

The title of the 1925 act read: "AN ACT relating to railroads; providing for the relocation of highways crossing railroad rights-of-way without corporate limits of cities and villages in order that railroad crossings thereover may be eliminated; providing for the separation of grade work so as to carry such highways over or under said rights-of-way; prescribing the duties of the State Railway Commission, if county boards or other public authorities in interest shall fail to agree upon the expense of such changes, relocations, or constructions; and to repeal all acts and parts of acts in conflict therewith."

Section 4 of the 1925 enactment provided: "All acts and parts of acts in conflict with the three preceding sections are hereby repealed." The three sections re-

ferred to now appear as sections 75-430, 75-431, and 75-432, R. S. 1943.

Section 75-430, R. S. 1943, provides: "Whenever a railroad crosses or shall hereafter cross a public highway at grade, outside of incorporated cities and villages, the railroad company and the county board of the county in which such crossing is located may agree upon such changes, alterations or constructions of any such crossing as will promote the public convenience or safety, and they may also agree upon the relocation of any highway so as to eliminate such crossings entirely, or so as to carry them over or under such railroad, and upon the apportionment of the expenses incident to any such changes, alterations, relocations or construction between the railroad company and the county or other public authority in interest."

Section 75-431, R. S. 1943, provides: "If the railroad company and the county board or other public authority in interest fail to agree upon any of the matters or things mentioned in section 75-430, either the railroad company, the county board, or other public authority in interest, in the name of the county, or other public authority in interest, may file an application with the State Railway Commission, setting forth such fact, together with a statement of the changes, alterations, relocations or constructions desired, the estimated cost thereof, and such other facts as may be relevant, and asking the commission to make an order directing that the desired changes, relocations or constructions be made. The commission shall proceed to hear such applications in the manner provided by law, and if it finds that the application should be granted, it shall make an order accordingly, designating therein what portion of the expense of complying with the order shall be paid by the railroad company and what portion shall be paid by the county or other public authority in interest, if any."

Section 75-432, R. S. 1943, provides: "The county

board, or other public authority in interest, shall have authority and power to carry out any such agreement or order of the State Railway Commission and may establish, vacate or relocate any public road so as to comply with any such agreement or order of the commission. The procedure shall be that provided by sections 39-101 to 39-160 insofar as the same is applicable, but no petition shall be necessary or required."

It is readily apparent that section 75-428, R. S. 1943, enacted in 1921, contained a limitation upon the powers and duties of the commission in connection with "the projection of a new public highway crossing or to the abandonment of an existing public crossing." However, on the other hand, the 1925 act, phrased in clear and specific as distinguished from general language, provided otherwise in proper cases such as the one at bar, and repealed all acts and parts of acts in conflict therewith.

Without doubt, the 1925 act was complete in itself and effectively provided a comprehensive authority and procedure whereby, in order to promote public convenience or safety, whenever a railroad crosses or shall hereafter cross a public highway at grade outside of incorporated villages and cities, such crossing may be changed, altered, or constructed, or any highway may be relocated so as to eliminate such crossings entirely, or so as to carry them over or under such railroad by agreement between the county board and the railroad company, or upon failure thereof, by application to the State Railway Commission, which it shall be required to hear and determine upon the merits.

We are unable to find any reason why the act would not be effectual to give the commission the power and authority to hear and determine plaintiff's application and enter an appropriate order upon the merits. Clearly, the 1925 act superseded and repealed the last sentence of section 75-428, R. S. 1943, which limited the commission's power and authority. That must be true because

a legislative act, complete in itself, may supersede or repeal all preexisting acts or parts of acts in conflict therewith upon the same subject without numerically designating the particular sections so superseded or repealed. It is also the rule that a preexisting statute will be considered as modified, superseded, or repealed by implication insofar as it is in conflict or inconsistent with a subsequently enacted statute, which is complete in itself and inclusive of the same subject. State ex rel. Kaspar v. Lehmkuhl, 127 Neb. 812, 257 N. W. 229; Drew v. Mumford, 114 Neb. 100, 206 N. W. 159; Uttley v. Sievers, 100 Neb. 59, 158 N. W. 373; Hinman v. Temple, *supra*.

Section 75-432, R. S. 1943, specifically gives the county board authority and power to carry out an agreement made between the railroad company and the county board or an order of the State Railway Commission theretofore authorized by sections 75-430 and 75-431, R. S. 1943. It then gives the county board authority and power to establish, vacate, or relocate any public road, in compliance with any such agreement or order of the commission, and provides that: "The procedure shall be that provided by sections 39-101 to 39-160 insofar as the same is applicable, but no petition shall be necessary or required."

As a matter of course, the last sentence of that very section itself answers adversely to it defendant's contention that the first resolution of the county board, closing the crossing upon application by the railroad company, was unlawful because a petition therefor, signed by at least ten electors residing within five miles of the road, was not filed, as provided by section 39-105, R. S. 1943.

Section 39-102, R. S. 1943, provides: "No public road or any part thereof shall be vacated or changed without the consent of the majority of the voters living within two miles of the road and not living in a village or city." Defendant contended that the 1925 act did not in any

manner effect the application of that requirement, but stated in section 75-432, R. S. 1943, that it should be followed as a part of the required procedure.

Upon that premise defendant argued that since section 39-102, R. S. 1943, had admittedly not been complied with, the county board had no authority to close the crossing, and the commission had no authority to entertain plaintiff's application. We cannot agree with that contention.

We must bear in mind that section 75-432, R. S. 1943, is a special statutory provision with regard to a particular subject, and as such is part of an act complete in itself, which supersedes and governs the general provisions of section 39-102, R. S. 1943, previously enacted. In re Application of Moritz, 147 Neb. 400, 23 N. W. 2d 545.

This court has only recently applied the rule that when the Legislature subsequently enacts legislation making related preexisting laws applicable thereto it will be presumed that it did so with full knowledge of such preexisting legislation and the judicial decisions of this court construing and applying it. When subsequently enacted legislation by reference incorporates preexisting laws "insofar as same is applicable," such an expression is always the controlling language which cannot be overlooked in determining the force or application of the adopted statute in a particular situation like the one at bar. Halligan v. Elander, 147 Neb. 709, 25 N. W. 2d 13.

In that connection it will be observed that the procedural portion of section 75-432, R. S. 1943, relates only to procedure to be followed by the county board in order to authoritatively carry out "any such agreement or order of the State Railway Commission" theretofore authorized, and "establish, vacate or relocate any public road" so as to comply therewith. In doing so, the procedure should be that provided by sections 39-101 to 39-160, R. S. 1943, but only "insofar as same is applicable." An examination of the applicable sections discloses that they

adequately protect the rights of all persons lawfully interested in the exercise of such authority by the county board.

It is apparent at once that section 39-102, R. S. 1943, has no relation or application to methods of procedure. It simply imposes a limitation upon the county board's power and authority to vacate or change a road under circumstances having no similarity with those in this proceeding. The 1925 act specifically superseded and removed that limitation in proper cases, such as the one at bar. Section 39-102, R. S. 1943, has no application in such a situation. To hold otherwise would give the 1925 act no force or effect. As a matter of fact, to so hold would, regardless of public convenience or safety, subject authoritative agreements of the county board with the railroad company, and official orders of the State Railway Commission, to a referendum of the voters living within two miles of the road, and not living in a village or city, which the Legislature clearly never intended.

We call attention to the fact that cases relied upon by defendant are all either distinguishable upon the facts and statutes involved, or decided prior to 1925, at a time when the authority of the county board in the premises was paramount, but its exercise was limited, and at a time when the authority of the State Railway Commission did not extend "to the projection of a new highway crossing or to the abandonment of an existing public crossing," as it now does in appropriate cases "whenever a railroad crosses or shall hereafter cross a public highway at grade outside of incorporated cities and villages."

We conclude that the statutes involved clearly conferred power and authority upon the State Railway Commission to hear and determine plaintiff's application on the merits, and the cause should be and hereby is reversed and remanded with directions that it do so.

REVERSED AND REMANDED
WITH DIRECTIONS.