GWENDOLYN KAY ZIMMERMAN, APPELLEE, V. CONTINENTAL CASUALTY COMPANY, A CORPORATION, APPELLANT.
150 N. W. 2d 268

Filed April 28, 1967. No. 36367.

Tye, Worlock, Knapp, Tye & Jacobsen, for appellant.

Munro, Parker, Munro & Grossart, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and WEAVER, District Judge.

McCOWN, J.

The plaintiff recovered judgment for $2,000 on an accident insurance policy for the death of her husband, the insured. The defendant insurer has appealed.

The insured decedent died September 9, 1964, when struck by a train engine. He was operating a paving breaker run by compressed air and breaking out cement on a railroad bridge backwall as a member of a bridge and building crew for the Union Pacific Railroad. He was facing south with the back of his legs up against the south rail of the eastbound track. Other members of the bridge crew were also working in the immediate area. Some of the others saw the train before it hit the decedent. At least one "hollered"; one threw gravel at the decedent which hit him on the back; and he "jerked his head to the right and by that time the train hit him." The insured apparently died almost instantly.

The accident insurance policy involved had been sold by defendant's agent to the insured decedent on August 6, 1964, while the insured was working with a bridge crew near Sutherland, Nebraska. The application for the insurance was filled in by the soliciting agent at that time, and signed by the insured. The agent testified that: "He looked at it and signed it. Whether he read it or not, I can't answer." The policy was an accident policy covering only disability and death benefits "caused by an accident occurring while this policy is in force and re-

sulting directly and independently of all other causes in loss covered by this policy."

The policy specifically excluded suicide or any attempt thereat. The form of application was for accident and health or accident policy. Question number 6 was: "To the best of your knowledge and belief have you ever been medically treated for or had any of the following: Abnormal blood pressure, ulcers, tuberculosis, appendicitis, hernia, diabetes, cancer, gall bladder, syphilis, goiter, paralysis, sciatica, arthritis, rheumatism, any disorder of the mental, nervous, genito-urinary, respiratory or digestive systems, rectum, eyes, back, spine or heart?" This question was checked "Yes," the word "ulcers" was underlined, and to the right the agent wrote: "Minor case apparently under control Acc. only being applied for."

Question number 7 was: "To the best of your knowledge and belief have you had medical or surgical advice or treatment, or been hospital confined during the past 5 years other than stated above?

Question number 8 was: "To the best of your knowledge and belief do you now have any physical impairment, deformity, or disease other than stated above?"

Both of these questions were answered: "No."

Immediately above questions 6 through 8 appeared the language: "Check 'Yes' or 'No,' circle condition and explain in space provided. If 'yes' is checked or any part of No's. 6, 7, or 8, state type of condition, treatment, dates, duration, results, doctors' and hospitals' names."

The insured, while confined in the city jail of Hastings, Nebraska, on June 30, 1963, attempted suicide and was taken from the jail to the Hastings State Hospital where he was confined from June 30, 1963, to July 13, 1963. On October 28, 1963, the insured was again returned to the Hastings State Hospital because he had been drinking and threatened both his own life and that of his wife. He was in the hospital on that occasion until December 2, 1963, when he was again released. His condition in

the hospital had been diagnosed as psychoneurotic disorder, depressive reaction.

The defendant insurance company alleged fraud and misrepresentation by the insured with reference to the application; that it had relied upon the truthfulness of the answers and was deceived thereby to its injury; and that had truthful answers been given, no policy would have been issued. It alleged the tender of premiums paid and rescission of the policy, and prayed for dismissal. The issues were submitted to the jury and the jury's verdict was for the plaintiff beneficiary.

Essentially, the assignments of error on the part of the defendant might be summarized as contending that the defendant was entitled to judgment as a matter of law, and that the case should not have been permitted to go to the jury and that, in any event, the instructions were prejudicially erroneous.

The fundamental issue is whether a portion of a statute relating to sickness and accident insurance adopted in 1947 prevails over a general insurance statute adopted in 1913, both of which are still in effect.

In 1913, the Legislature adopted a statute which is now section 44-358, R. R. S. 1943, which provided: "No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding."

The provision adopted in 1947 applied only to sickness and accident insurance. The title, among other things, recited: "to provide for construction of applications and to prohibit alteration thereof." The act provided

for repeal only of sections 44-504, 44-505, and 44-506, R. S. 1943. The provision was recodified in 1957 and now appears as section 44-710.14, R. R. S. 1943, and provides: "The falsity of any statement in the application for any policy covered by this act may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer."

It is the position of the defendant that the later act constituted special provisions relating to particular subject matter and prevails over the provisions in the earlier statute. We cannot agree. That rule of construction applies only insofar as there is a conflict between the two. We can find no authority to support the proposition that the adoption of such provisions repeals, by implication, all provisions of the general act, including those not in conflict. We believe rather that the two statutes should be read in pari materia. This conclusion is supported by the fact that the primary purpose of the Legislature in adopting such statutes is to protect the insured or his beneficiary. See 7 Couch on Insurance (2d Ed.), § 35:170, p. 196. The repeal by implication of specific requirements of the earlier statute would, for example, remove the requirement that the insurance company be "deceived to its injury." It should also be pointed out that the language of the older general statute is mandatory, using the word "shall" while the later statute uses the word "may."

The later statute, if construed as the defendant contends, would require only proof that the statement in an application was false, and that it materially affected either the acceptance of the risk or the hazard assumed. It is pleaded that the insured's answers and representations in the application were misleading, false, and fraudulent; were knowingly made with intent to deceive and mislead the defendant; that the defendant relied and and acted upon said statements and misrepresentations; and that as a result thereof defendant was damaged:

These allegations are drawn in the language applicable to the general statute, in addition to the later or special statute, and we think quite properly so. The requirement of the older statute that the company be "deceived to its injury," and the judicial interpretation of the older statute requiring that the statements or misrepresentations "were made knowingly by the insured with the intent to deceive," lie at the crux of the matter. This court has consistently held, at least since 1940, under the older statute, that in order for misrepresentations in an application for insurance to constitute a defense to an action on the contract it is incumbent upon the insurance company to plead and prove, among other things, that the statements or misrepresentations were made knowingly by the insured with the intent to deceive and that the insurance company relied and acted upon such statements or representations and was deceived by them to its injury. See Carpenter v. Sun Indemnity Co., 138 Neb. 552, 293 N. W. 400. This rule has been consistently adhered to, at least with respect to questions calling for opinion, judgment, or belief, down through the case of Vackiner v. Mutual of Omaha, 179 Neb. 300, 137 N. W. 2d 859, although the issue of whether section 44-710.14, R. R. S. 1943, applied rather than section 44-358, R. R. S. 1943, was not raised in that case.

In this type of case, the rules as to materiality, fraud, intent, deceit, and injury are in somewhat hopeless confusion where applied to particular factual situations, and further complicated by the variety and extent of statutory variations from state to state. There is even more confusion when it comes to the question of when a given case is for the jury and when it is for the court to determine as a matter of law.

Under the particular facts of this case, the issues of whether the insured's misrepresentations or false statements in the application for insurance were made knowingly with intent to deceive and the company was thereby deceived to its injury were for the jury. The insur-

ance involved was accident insurance only, and specifically excluded suicide or attempts thereat. The jury specifically found the death accidental. The agent who solicited the sale of the policy filled in the blanks himself, indicating "accident only" being applied for. The application form was a form for both accident and health or accident insurance. While we do not hold that fraudulent misrepresentations in an application for accident insurance must also contribute to the accident or the loss, the jury is entitled to consider the facts as to how the loss occurred in connection with its determination of fraudulent intent, and whether the insured's misrepresentations or false statements were made knowingly with intent to deceive and that the company was thereby deceived to its injury.

In the case before us, however, there were three separate instructions, each purporting to cover the general area of the proof necessary for the defendant to establish its defense. Instruction No. 7 specifically placed the burden on the defendant to establish its defense and detailed the elements required to be proved. This instruction did not require the defendant to prove that the statements were made with intent to deceive nor that the company was deceived to its injury. Instruction No. 9 likewise went into the same detailed requirements in somewhat different language omitting the requirement that the statements were made with intent to deceive. Instruction No. 10, again in different language, repeated the general elements preceded by a qualification that the plaintiff's decedent "was suffering from mental illness which afterwards contributed to his death."

An instruction which misstates the issues or defenses and has a tendency to mislead the jury is erroneous. Chard v. New York Life Ins. Co., 145 Neb. 429, 16 N. W. 2d 858.

Conflicting instructions are erroneous and prejudicial unless it appears that the jury was not mislead. Darnell v. Panhandle Coop. Assn., 175 Neb. 40, 120 N. W. 2d 278.

The combination of misstatement of defenses and conflicting requirements, coupled with repetition and a tendency to mislead the jury must, therefore, be deemed prejudicial and require reversal.

Since the case must be retried, we refer also to the defendant's assignment of error that the court improperly excluded evidence involving privileged communications between the insured and his physicians where the evidence was obtained after a waiver had been withdrawn. At the time of the withdrawal of the waiver, the trial court required the defendant insurer to disclose what information had been discovered while the waiver was in force and permitted its introduction, but excluded evidence involving privileged communications obtained after the waiver was withdrawn. A waiver of protection against the disclosure of privileged communications may be withdrawn at any time before acted upon. See Herpolsheimer v. Citizens Ins. Co., 79 Neb. 685, 113 N. W. 152. The rule was properly applied by the court here.

For the reasons stated, the defendant's alternative motion for a new trial should have been granted, and the judgment is, therefore, reversed.

REVERSED AND REMANDED.

WHITE, C. J., dissenting.

I respectfully dissent. As the majority opinion states, the crucial issue is whether section 44-710.14, R. R. S. 1943, governs this case. This provision was last enacted as section 15 of Laws 1957, chapter 188, page 658. The title to this act states that its purpose is, "to prescribe uniform provisions for individual accident and sickness insurance policies, * * * to describe the effect of statements made in the application * * *." The act consists of 22 sections and repeals about 49 previously existing sections of the statute relating to accident and health insurance. It provides, among other things, that when any policy provision is in conflict with any provisions of the act, that the rights and duties of the insurer, in-

sured, and the beneficiary shall be governed by the provisions of the act. Other provisions are to the same effect. It seems to me that no one could doubt that this act was a comprehensive independent act designed to govern the insurance and liability provisions of accident and health policies. I do not see how the Legislature could have more clearly expressed its intent to comprehensively regulate the subject matter of the act, accident and health policies. What then, is the posture of section 44-358, R. R. S. 1943, enacted in 1913 with relation to section 44-710.14, R. R. S. 1943?

A preexisting statute will be considered as modified, superseded, or repealed by implication insofar as it is in conflict or inconsistent with a subsequently enacted statute, which is complete in itself, and inclusive of the same subject. And where a legislative act is complete in itself, it is adequate, without numerical designation and specific amendment or repeal, to supersede, supplement, or modify earlier acts or parts of acts in conflict with them. The last expression of the legislative will is the law. Chicago & N. W. Ry. Co. v. County Board of Dodge County, 148 Neb. 648, 28 N. W. 2d 396; Mogis v Lyman-Richey Sand & Gravel Corp., 189 F. 2d 130, rehearing denied 190 F. 2d 202, certiorari denied 342 U. S. 877, 72 S. Ct. 168, 96 L. Ed. 659; Stoller v. State, 171 Neb. 93, 105 N. W. 2d 852; Consumers Public Power Dist. v. Eldred, 146 Neb. 926, 22 N. W. 2d 188. See, also, Nebraska Digest, Statutes, key numbers 159 and 161 (1). There can be no question that section 44-710.14, R. R. S. 1943, the new statute, prevails.

By its terms, the statute intended to cover the area of the requirements to bar recovery, of a statement that was false and material to the *acceptance* of the risk. Under the 1913 statute (section 44-358, R. R. S. 1943) the false statement material to the risk must have been made knowingly by the insured with the intent to deceive. Carpenter v. Sun Indemnity Co. (1940), 138 Neb. 552, 293 N. W. 400.

The Legislature is presumed to have had knowledge

of this requirement when it enacted section 44-710.14, R. R. S. 1943. It did require that the falsity of the statement be material to the acceptance of the risk but there is no requirement that it be made by the insured knowingly with intent to deceive. In my opinion, we have no right to write that requirement into the statute. The statute now says that recovery may be barred if the statement is false and material to the acceptance of the risk. The majority opinion states, in effect, that it may not bar recovery unless knowingly made by the insured with intent to deceive and was material to the acceptance of the risk. This flies in the face of the plain, unambiguous language of the statute itself. Furthermore, it is difficult to see how a statement make knowingly with intent to deceive could relate to the degree of risk incurred by the company in the acceptance of the application. The degree of risk in the acceptance of the application would exist irrespective of whether the false statement was made knowingly with intent to deceive. The Legislature had a right to say that the insurance company had a right to make a determination as to the degree of risk involved based on the true facts irrespective of whether the insured's statement was knowingly false with intent to deceive.

The undisputed facts in this case are that the insured made false statements material to the acceptance of the risk. He falsely stated in writing that he had not been hospital confined in the past 5 years prior to August 6, 1964, when in fact he had been confined in the Hastings State Hospital for 2 weeks in July 1963, and for over a month from October 28, 1963, to December 2, 1963. He had attempted suicide by slashing his wrists and attempted hanging on or about June 30, 1963, had been treated by doctors in the hospital, had been confined to the Lincoln Veteran's Hospital within the 5-year period of time, had discussed his hospitalization many times with the plaintiff, his wife, and drank to excess and threatened both of their lives. It is not suggested in the

majority opinion that these conditions and facts were not material to the acceptance of the risk. The evidence is conclusive that a person with a mental disorder, including hospital confinements, is more prone than the average person to accidents, particularly self-inflicted accidents, and the hazard of self-destruction which could be construed as an accident. The evidence is also conclusive that the insurance company would not have accepted this risk and application if it had known the true facts as to hospitalization and treatment.

Furthermore, even assuming that there is a requirement that the false statements were made knowingly, with intent to deceive, I submit that the evidence meets that test also. Intent is buried in the recesses of a man's mind. We determine intent from what he says or by his conduct. Can it reasonably be said that the insured did not know the facts or inadvertently overlooked answering these pertinent questions truthfully? The only answer is that the truth was knowingly and fraudulently concealed. How else could the insurance company, absent the presence of the deceased, prove the knowing concealment of the facts, other than in the manner present in this case?

The defendant was entitled to a directed verdict. Can anyone say that the grounds here shown are not reasonable grounds for the insurance company to say that it would not have issued the policy if the insured had truthfully revealed them in his application? If the concealed facts in this case do not affect the acceptance of the risk, then what facts will? If such facts do not affect the acceptance of the risk, then what benefit is there in taking an application requiring disclosures as to health, physical or mental condition, treatment in hospitals, and the like?

CARTER, J., joins in this dissent.